IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| ROBERTO CLAROS,<br>JOSÉ CLAROS,<br>FREDY ZAMORANO,<br>OSBALDO LOPEZ,<br>HECTOR ANDRADE, and<br>MARIO HERRERA MACURÁN | JURY TRIAL DEMANDED |
| Plaintiffs, | |
| v. | Civ. No: 1:16-cv-344-AJT-MSN |
| SWEET HOME IMPROVEMENTS, INC.,<br>7700 Little River Turnpike #103<br>Annandale, VA 22003 | |
| Serve: Miae Koo, Registered Agent<br>(same address) | |
| MYUNG KWAN KOO, and<br>MIAE KOO | |
| Defendants | |

## **FIRST AMENDED COMPLAINT**

### **Preliminary Statement**

1. Plaintiffs bring this action against Defendants for failure to pay minimum wages and overtime as required by the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 (FLSA). Defendant Sweet Home Improvements, Inc.'s failure to pay promised wages also constitutes a breach of contract under Virginia law. Plaintiffs Roberto Claros and José Claros each bring

1

an additional breach-of-contract claim under Virginia law against Sweet Home, also based on a failure to pay wages.

2. The Court has subject-matter jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b) (private right of action) and 28 U.S.C. § 1331 (federal question). The court has subject-matter jurisdiction over Plaintiffs' state-law breach-of-contract claims because they are so closely related to Plaintiffs' federal-law claims as to form part of the same case or controversy. *See* 28 U.S.C. § 1367(a).

3. The Court has personal jurisdiction over the Defendants because all Defendants are domiciled in this District and because the work was performed in Fairfax County. Venue is proper in this Court for the same reason. *See* 28 U.S.C. § 1391(b)(1)-(2).

## **PARTIES**

2. Plaintiffs are adult residents of Virginia who worked for Defendants' residential construction and remodeling business.

3. Plaintiff José Claros ("José") is an adult resident of Fairfax County, Virginia.

4. Plaintiff Roberto Claros ("Roberto") is an adult resident of Fairfax County, Virginia.

5. Plaintiff Freddy Zamorano is an adult resident of Fairfax County, Virginia.

6. Plaintiff Osbaldo Lopez is an adult resident of Arlington, Virginia.

7. Plaintiff Hector Antonio Andrade is an adult resident of Arlington, Virginia.

8. Plaintiff Mario Herrera Macurán is an adult resident of Fairfax County, Virginia.

9. Defendant Sweet Home Improvements, Inc. ("Sweet Home") is a Virginia corporation.

10. Defendant Myung Kwan Koo ("Mr. Koo") is a Sweet Home director. He is also the corporation's president.

11. Defendant Miae Koo ("Mrs. Koo") is a Sweet Home director. She is also the corporation's registered agent.

12. Defendants maintain an office and showroom in Annandale, Virginia.

13. Upon information and belief, the Koos are the owners of Sweet Home.

## FACTS

### Defendants

14. Defendants are in the residential construction and remodeling business.

15. Defendants Myung Kwan and Miae Koo control the day-to-day operations of Defendant Sweet Home.

16. Defendants hired Plaintiffs and, upon information and belief, had the power to fire them.

17. Defendants directly or indirectly set Plaintiffs' work schedules, or had the power to do so.

18. Defendants instructed Plaintiffs which construction or remodeling projects to work on throughout the day.

19. Defendants determined the Plaintiffs' rate and method of payment.

20. Upon information and belief, Defendants perform residential construction and remodeling services in multiple states, including Virginia, Maryland, and the District of Columbia.

21. Upon information and belief, at all relevant times, Defendants had an annual gross volume of business of over $500,000.

22. Upon information and belief, Defendants have at least two employees who are engaged in interstate commerce, or who handle, sell, or otherwise work on goods or materials that have moved in interstate commerce.

**Plaintiff José Claros**

23. Plaintiff José Claros met Defendant Myung Kwan Koo around mid-April 2015, after José answered Defendants' job posting on the classified advertising website Craigslist. Mr. Koo offered to hire José as a carpenter at the rate of $22 per hour, and José started work the next day.

24. José worked primarily building decks for houses around Annandale, Virginia, with occasional jobs in Chantilly and Sterling.

25. About two or three weeks later, Defendants also hired José's brother, Plaintiff Roberto Claros, as a carpenter, and from then on the two worked as a team. On occasion, José would also arrange for a "helper" to assist the brothers for a day or a few days, if a project needed some more hands. The "helpers" were people whom José suggested, but Mr. Koo had to approve their pay rate, because Defendants were the ones who paid them.

26. Mr. Koo would pay José directly, as cash or check in hand.

27. At no time during José's employment did Defendants pay José an overtime premium for any hours that he worked beyond 40 in a given week.

28. Defendants did not pay José any compensation for his last four weeks of work, comprising approximately the month of August 2015.

29. During this period, José estimates that he worked for Defendants about nine or ten hours a day Monday through Friday, plus about three additional hours each week. José also worked two Saturdays and two Sundays during this period, for about 7 or 8 hours each day, though

he does not remember the precise weeks that this weekend work occurred.[1] He received a 15-minute break per day.

30. José complained to Mr. Koo about his unpaid wages every week during this period, But Mr. Koo said that he did not have the money to pay him.

31. After the fourth week of non-payment, José told Mr. Koo that he intended to quit. Mr. Koo convinced José to stay long enough to wrap up the Sweet Home projects that José had already started. Mr. Koo promised to pay José $150 per day for 40 hours of work per week: 8 hours a day, Monday through Friday. But for this inducement, José would have quit right away.

32. Mr. Koo paid José properly for one week under this arrangement, from approximately August 31 to September 4, 2015. But his pay for the second week, approximately September 7–11, 2015, was short $600 (four days' pay). When Mr. Koo had not fixed the situation by the beginning of the following week, José Claros quit for good.

**Plaintiff Roberto Claros**

33. Plaintiff Roberto Claros first met Defendant Myung Kwan Koo around May 3, 2015 at the Sweet Home office. Roberto had learned of the job from his brother, Plaintiff José Claros, who had already been working for Defendants for about two or three weeks. Mr. Koo hired Roberto as a carpenter at the rate of $18 per hour, and he started work the next day.

---

[1] As José had already worked over 40 hours by the Friday of each of the four weeks in question, any weekend hours would necessarily be subject to the FLSA's overtime premium no matter the precise week in which they were accrued. For this reason, José recollection does not preclude the Court from determining his measure of damages with certainty.

34. Roberto worked alongside his brother as a team. They primarily worked building decks for houses around Annandale, Virginia, with occasional jobs in Chantilly and Sterling.

35. Mr. Koo would pay Roberto directly, as cash or check in hand.

36. At no time Roberto's employment did Defendants pay Roberto an overtime premium for any hours he worked beyond 40 in a given week.

37. Defendants did not pay Roberto any compensation for his last four weeks of work, comprising approximately the month of August 2015.

38. During this period, Roberto estimates that he worked for Defendants about nine or ten hours a day Monday through Friday, plus about three additional hours each week. Roberto also worked two Saturdays and two Sundays during this period, for about 7 or 8 hours each day, though he does not remember the precise weeks that this weekend work occurred.[2] He received a 15-minute break per day.

39. Roberto complained to Mr. Koo about his unpaid wages every week during this period, But Mr. Koo said that he did not have the money to pay him.

40. After the fourth week of non-payment, Roberto told Mr. Koo that he intended to quit. Mr. Koo convinced Roberto to stay long enough to wrap up the Sweet Home projects that Roberto had already started. Mr. Koo promised to pay Roberto $150 per day for 40 hours of work per week: 8 hours a day, Monday through Friday. But for this inducement, Roberto would have quit right away.

---

[2] As Roberto had already worked over 40 hours by the Friday of each of the four weeks in question, any weekend hours would necessarily be subject to the FLSA's overtime premium no matter the precise week in which they were accrued. For this reason, Roberto's recollection does not preclude the Court from determining his measure of damages with certainty.

41. Mr. Koo paid Roberto properly for one week under this arrangement, from approximately August 31 to September 4, 2015. But his pay for the second week, approximately September 7–11, 2015, was short $600 (four days' pay). When Mr. Koo had not fixed the situation by the beginning of the following week, Roberto Claros quit for good.

**Plaintiff Fredy Zamorano**

42. Plaintiff Fredy Zamorano worked for Sweet Home for three weeks, from approximately September 28–October 17, 2015. His pay rate was $20 per hour. He worked Monday to Saturday, 10 hours a day with no break.

43. Mr. Zamorano worked on two bathroom remodeling projects for Sweet Home, installing tile, ceramic, bathtubs, toilets, and vanities. He would sometimes use a "water saw" to cut marble and tile pieces into their proper shapes.

44. Both of these locations were in or around Fairfax County, Virginia.

45. Mr. Zamorano worked on these projects by himself.

46. Defendants paid Mr. Zamorano for his first two weeks of work, but they failed to pay him for the 60 hours we worked in the third week, approximately October 12–17, 2015.

**Plaintiff Osbaldo Lopez**

47. Plaintiff Osbaldo Lopez met Defendant Myung Kwan Koo around February or March of 2015. Mr. Koo first hired Mr. Lopez around that time for about four weeks, mostly doing painting and drywall. He was paid properly during this time.

48. Later that year, Mr. Koo called Mr. Lopez to see if he wanted to work for Sweet Home again, and Mr. Lopez said that he did. Mr. Lopez worked for Sweet Home from September

7, 2015 to September 18, 2015. He worked Monday to Friday, 8 hours per day: 7:30 am. to 4:00 pm., with a half-hour break. On one day, he worked an additional hour. His duties continued to be mostly painting and drywall.

49. All the work that Mr. Lopez performed in September 2015 was done in or around Fairfax County, Virginia.

50. Mr. Koo paid Mr. Lopez at a flat daily rate of $150 per day. Mr. Lopez worked eight hours per day (save for one day when he worked 9 hours), so his hourly rate was $18.75 per hour.

51. Mr. Lopez received no pay at all for the ten days of work he performed for Defendants:
    - September 7 – September 11: 40 hours
    - September 14 – September 18: 41 hours

**Plaintiff Hector Antonio Andrade**

52. On March 28, 2015, Defendant Myung Kwan Koo asked Plaintiff Hector Antonio Andrade to come to the Sweet Home office at 5 pm. for an interview. Mr. Andrade arrived early. Mr. Koo arrived late, and appeared to Mr. Andrade to have been drinking.

53. At the interview, Mr. Andrade showed Mr. Koo photographs of his past work, including tile, marble, and kitchens that he had worked on. Mr. Koo liked Mr. Andrade's work. Mr. Koo offered Mr. Andrade a job at Sweet Home starting the next day, and offered to pay him $25 per hour. Mr. Andrade accepted.

54. Mr. Andrade worked for Defendants from March 29 through June 18, 2015. His first assignment with Sweet Home was a demolition. His regular duties for Sweet Home included plumbing, framing, drywall, and electrical work. He would sometimes drive scaffolding and other supplies to various Sweet Home worksites.

8

55. All of the worksites were in Virginia, in or around Fairfax County, or in Washington D.C.

56. Mr. Koo gave Mr. Andrade his work assignments each day, usually by phone. Mr. Koo talked with Mr. Andrade by phone multiple times every work day.

57. Mr. Andrade sometimes worked alone. At other times, Mr. Koo would assign one or two newer workers to work on the same job as Mr. Andrade, because Mr. Andrade was an experienced worker. These "helpers" were inexperienced workers whom Mr. Koo had hired—Mr. Andrade did not know them. Mr. Koo set their wage rates. And they reported their own hours directly to Mr. Koo at the end of the workday.

58. The "helpers" that Mr. Koo assigned were not of much help to Mr. Andrade, who found that they slowed down the progress of the job because he had to spend time correcting their mistakes. Mr. Andrade did not have independent firing power over the helpers; he had to check with Mr. Koo. On one occasion, Mr. Koo assigned two helpers to a job with Mr. Andrade, but they were not doing a good job. Mr. Andrade called Mr. Koo and asked what he should do, and Mr. Koo said to fire them.

59. Mr. Andrade asked Mr. Koo if Mr. Andrade could choose his own helpers, but Mr. Koo said no.

60. For Mr. Andrade's first three weeks, everything was fine. But beginning the week of May 4, 2015, Defendants stopped paying Mr. Andrade his wages. His paycheck for the week of May 4 – May 10 bounced, and he received no paychecks after that.

61. Mr. Andrade's kept records of his work hours in the form of weekly text messages on his cell phone. These messages show the following unpaid hours each week:

- May 4 – May 10: 51 hours

- May 11 – May 17: 53 hours
- May 18 – May 24: 34 hours

62. Mr. Andrade did not record his hours of his last week of work (June 1 – June 7), but he estimates that he worked about 52 hours that week.

63. On June 1, Mr. Andrade texted Mr. Koo, saying that his mother was in the hospital, and that he needed his unpaid wages in order to pay his rent. Mr. Koo replied that he was going through a hard time, and that he would pay Mr. Andrade once a job in Maryland was finished. Mr. Andrade replied that he could not wait. Mr. Koo did not respond.

64. On June 5, Mr. Koo sent Mr. Andrade a text message, saying that Mr. Andrade should come to Defendants' showroom next Tuesday after 5 pm. to receive his back wages.

65. On June 15, the day before Mr. Andrade was supposed to pick up his check at the showroom, Mr. Koo sent Mr. Andrade a text message, saying that Mr. Andrade's paycheck was already in the mail, and asking Mr. Andrade to let him know if he received it.

66. Mr. Andrade replied, asking why Mr. Koo no longer wanted him to pick the check up at the showroom the next day as planned. He asked when this supposed check had been sent. He asked Mr. Koo to call him. Mr. Koo did not respond.

67. By Thursday, June 18, Mr. Andrade had not received a check from Mr. Koo. He sent Mr. Koo a text message saying that he was considering taking legal action if he did not receive his back wages by the following day.

68. On Friday, June 26, Mr. Andrade had still not received a check for his back wages. He sent Mr. Koo a text message asking Mr. Koo to call him. Mr. Koo did not reply.

69. Defendants have still not paid Mr. Andrade for any of the work he performed for them on or after May 4, 2015.

**Plaintiff Mario Herrera Macurán**

70. On or around May 26, 2015, Plaintiff Mario Herrera Macurán answered Defendants' job posting on the classified advertising website Craigslist, seeking electricians. Mr. Herrera sent a text message to the cell phone of Defendant Miae Koo, expressing his interest in an electrician job. Mr. Herrera received a text message in reply, instructing him to come to a house in Sterling the following morning at 8 a.m.

71. When Mr. Herrera went to the house the following day, he met with Defendant Myung Kwan Koo. Mr. Koo offered Mr. Herrera a job as an electrician, at the rate of $25 per hour. Mr. Herrera accepted the offer.

72. Mr. Herrera worked on at least four Sweet Home projects: one in Fairfax County and three in Loudon County. Some of these projects had other Sweet Home workers on site, performing non-electrical tasks such as framing and drywall, but Mr. Herrera worked by himself and did not supervise anyone.

73. From time to time, Mr. Herrera would be sent to Home Depot to get materials and supplies for a project that Sweet Home was working on. When this happened, Mr. Herrera would go to a part of the store that serves patrons with commercial accounts. Once there, Mr. Herrera would call Defendant Myung Kwan Koo, then pass the phone to a Home Depot employee so that the two could arrange for the selection and purchase of the needed products. On at least one occasion when Mr. Koo was unavailable to speak with the Home Depot representative, Defendant Miae Koo made the purchasing arrangements.

74. Mr. Herrera reported his hours to Mr. Koo at the end of each week, usually via text message. For the first two weeks or so, everything was fine. But Defendants paid Mr. Herrera no wages for the 78 hours he worked in his last two weeks:

- June 22–28: 48.5 hours
- June 29–July 3: 29.5 hours

75. Mr. Koo repeatedly contacted Mr. Herrera via text message, promising each time that he would pay Mr. Herrera's back wages but that he needed just a little more time. This went on for weeks, during which Mr. Herrera grew increasingly frustrated and continued to demand his back wages. Mr. Koo's last text message to Mr. Herrera came on August 12, 2015, and said simply "I'm busy call back later."

76. Mr. Herrera's back wages are still due and owing.

## FAIR LABOR STANDARDS ACT CLAIMS

**(Against All Defendants)**

77. At all times relevant to this action:

- Plaintiffs were Defendants' "employees" within the meaning of 29 U.S.C. § 203(e)(1);
- Defendants were Plaintiffs' "employers" within the meaning of 29 U.S.C. § 203(d);
- Defendants "employed" Plaintiffs within the meaning of 29 U.S.C. § 203(g); and
- Plaintiffs were employed by Defendants in an enterprise engaged in commerce, or were themselves engaged in commerce, within the meaning of 29 U.S.C. § 203(b).

## Claim 1:

### Failure to Pay Minimum Wages
### 29 U.S.C. § 206

78. Defendants failed to pay Plaintiffs at least $7.25 for each hour that they worked.

79. By failing to pay Plaintiffs at least $7.25 for each hour that they worked, Defendants violated the minimum-wage provisions of the Fair Labor Standards Act, 29 U.S.C. § 206.

## Claim 2:

### Failure to Pay Overtime Compensation
### 29 U.S.C. § 207

80. At no time during Plaintiffs' employment did Defendants pay them one-and-a-half times their regular rate of pay for any of the hours that they worked beyond 40 in a given week.

81. By failing to pay Plaintiffs an hourly time-and-a-half overtime premium, Defendants violated the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 207.

## VIRGINIA CONTRACT CLAIMS

### Claim 3

### Breach of Contract (Against Defendant Sweet Home Improvements, Inc. Only)

82. Each Plaintiff reached an agreement with Defendant Sweet Home Improvements, Inc. whereby Sweet Home agreed to pay that Plaintiff a certain wage in exchange for that Plaintiff's performing construction and remodeling work for Sweet Home.

83. Employment contracts were thus formed under Virginia law.

84. Sweet Home failed to pay Plaintiffs for all the work they performed, breaching the contracts.

85. As a result of Sweet Home's breach, Plaintiffs suffered damages.

## Claim 4

**Breach of Contract (Against Defendant Sweet Home Improvements, Inc. Only)**

86. As detailed above in ¶¶31–32, around the end of August 2015, Defendant Sweet Home Improvements, Inc. offered to pay Plaintiff José Claros $150 a day as an inducement not to quit and to finish the Sweet Home projects he had already started. José Claros accepted that offer.

87. A contract was formed under Virginia law.

88. Defendant Sweet Home did not pay José Claros for four days of work he performed under this agreement, breaching the contract.

89. As a result of Sweet Home's breach, José Claros suffered damages.

## Claim 5

**Breach of Contract (Against Defendant Sweet Home Improvements, Inc. Only)**

90. As detailed above in ¶¶40–41, around the end of August 2015, Defendant Sweet Home Improvements, Inc. offered to pay Plaintiff Roberto Claros $150 a day as an inducement not to quit and to finish the Sweet Home projects he had already started. Roberto Claros accepted that offer.

91. A contract was formed under Virginia law.

92. Defendant Sweet Home did not pay Roberto Claros for four days of work he performed under this agreement, breaching the contract.

93. As a result of Sweet Home's breach, Roberto Claros suffered damages.

## **RELIEF REQUESTED**

Wherefore, Plaintiffs respectfully request that the Court provide the following relief:

1. Award each Plaintiff his actual damages under the FLSA in the amount of all unpaid minimum and overtime wages, jointly and severally against all Defendants, in an amount to be proved at trial;

2. Award each Plaintiff an additional amount of liquidated damages equal to his actual damages, pursuant to 29 U.S.C. § 216(b), jointly and severally against all Defendants;

3. Award Plaintiffs their costs and their reasonable attorney's fees, as provided by the Fair Labor Standards Act, 29 U.S.C. § 216(b), jointly and severally against all Defendants;

4. Award Plaintiffs their contract damages under Virginia law, against Defendant Sweet Home Improvements, Inc. only;

5. Award Plaintiff José Claros his additional contract damages under Virginia law, against Defendant Sweet Home Improvements, Inc. only;

6. Award Plaintiff Roberto Claros his additional contract damages under Virginia law, against Defendant Sweet Home Improvements, Inc. only; and

7. Grant such other relief as the Court deems just and proper.

Plaintiffs demand trial by jury.

Respectfully submitted,


By: \_\_//s// Nicholas Cooper Marritz_____     Date: April 27, 2016
Nicholas Cooper Marritz (VSB No. 89795)
Simon Y. Sandoval-Moshenberg (VSB No. 77110)
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, Virginia 22041
Tel: (703) 778-3450
Fax: (703) 778-3454
nicholas@justice4all.org
*Counsel for Plaintiffs*

16

**Certificate of Service**

I, Plaintiffs' counsel, hereby certify that on this 27th day of April, 2016, I uploaded the foregoing First Amended Complaint to this court's CM/ECF system, which will cause a Notice of Electronic Filing (NEF) to be issued to all counsel of record.

By:  //s//  Nicholas Cooper Marritz                                                Date: 04/27/2016
Nicholas Cooper Marritz (VSB No.: 89795)
Simon Y. Sandoval-Moshenberg (VSB No.: 77110)
6066 Leesburg Pike, Suite 520
Falls Church, Virginia 22041
Ph: (703) 778-3450
Fax: (703) 778-3454
simon@justice4all.org
*Counsel for Plaintiffs*

17