UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

(ALEXANDRIA DIVISION)

| | |
|---|---|
| ROBERTO CLAROS et al., | |
| *Plaintiffs*, | **Case No: 1:16-cv-344-AJT-MSN** |
| v. | |
| SWEET HOME IMPROVEMENTS, INC., et al., | **Hearing Date**: July 1, 2016<br>10:00 a.m. |
| *Defendants* | |

### Memorandum in Support of
### Plaintiffs' Motion to Compel Discovery

Plaintiffs served Defendants with discovery requests on May 4, 2016. Defendants have produced inadequate responses to the requests of four of the Plaintiffs, and no responses at all to the requests of the other two. After repeated attempts to resolve the issue out of court, Plaintiffs now move for an order compelling Defendants to respond.

## FACTS

1.  On May 4, 2016, Plaintiffs served Defendants with interrogatories, requests for production of documents, and requests for admissions. Plaintiffs' discovery requests are attached as Exhibits A1–A6.

2. Defendants then had 33 days in which to serve their responses: the standard thirty days for each of these discovery devices,[1] plus an additional three days due to Plaintiffs' service by mail.[2] This meant that Defendants were required to serve their discovery responses by June 6.

3. Defendants did not serve any discovery responses by June 6.

4. On the morning of June 7, I emailed Defendants' counsel, notifying him that Defendants' discovery responses were overdue. (My email correspondence with Defendants' counsel is attached as Exhibit B). (This specific email is at Bates stamp 000001).

5.  In an effort to resolve the matter without the Court's intervention, I stated in the email that Plaintiffs would give Defendants several extra days to serve their discovery responses, and that Plaintiffs would not file a motion to compel if Defendants filed their responses by June 10 at 10:00 a.m. (*See id.*)

6. After receiving no response to this email, I called Defendants' counsel on the afternoon of June 7 and spoke with him about the delinquent discovery responses. Counsel stated that he was meeting with his client the next day about this case and some other matters, and that he would respond to our discovery requests as soon as possible. I reiterated that Plaintiffs would give him a few more days to respond, reminded him that his clients' responses were already overdue, and warned that Plaintiffs would file a motion to compel if complete, sworn responses were not forthcoming by June 10 at 10:00 a.m.

7. I memorialized this conversation it in an email to Defendants' counsel promptly after the conversation was over. I also inquired of counsel if he would be available for a motions

---

[1] *See* Fed. R. Civ. P. 33(b)(2) (interrogatories); Fed. R. Civ. P. 34(b)(2)(A) (requests for production of documents); Fed. R. Civ. P. 36(a)(3) (requests for admissions).

[2] *See* Fed. R. Civ. P. 5(b)(2)(C) (service by mail) and Fed. R. Civ. P. 6(d) (calculating time).

hearing on June 17, in the event that I had to file a motion to compel discovery. (Ex. B at 000002).

8. Defendants' counsel did not respond to this email.

9. Defendants did not produce any discovery by June 10 at 10:00 a.m.

10. At about 10:25, I called Defendants' counsel's office to see if any discovery responses were forthcoming. An office receptionist replied that Defendants' counsel was in court that morning, but that she would pass on the message to him.

11. In another effort to avoid involving the Court in this discovery dispute, I then emailed Defendants' counsel, stated that Plaintiffs had not received any discovery requests, but agreed to extend our deadline for his responses to 2:00 p.m. (Ex. B at 000003).

12. At 1:44 p.m., Defendants' counsel left a voicemail on my office answering machine. Defendants' counsel stated that he thought he had until the end of the day on June 10 to avoid a motion to compel, but that he likely wouldn't be able to make that deadline either. He stated that he was going to meet with his clients at 6:00 p.m. on the evening of June 10 in order to go over their discovery responses. He acknowledged that Plaintiffs "had every right" to file a motion, but stated that he could get the final discovery responses to Plaintiffs by Monday June 13, if not over the weekend.

13. I replied to Defendants' counsel by email at 3:34 p.m. I stated that Plaintiffs would forego filing a motion to compel if Defendants' complete, sworn discovery responses were in my possession by 10:00 a.m. on the morning of Monday June 13. I asked Defendants' counsel to make himself available for a hearing on a motion to compel on June 24 if Defendants failed to produce their complete responses by that time. (Ex. B at 000004).

14. I then called Defendants' counsel and left a voicemail on his cell phone to the same effect.

15. Defendants' counsel emailed me back a few minutes later, stating that "You will have our response by Monday." (Ex. B at 000005).

16. Shortly before ten on Monday morning, Defendants' counsel emailed me some discovery responses. (*See* Ex. B at 000007). Defendants' discovery responses are attached as Exhibits C1–C4.

17. Defendants' responses to the discovery requests of Plaintiffs Hector Andrade, Jose Claros, Roberto Claros, and Osbaldo Lopez were woefully inadequate, even by Defendants' counsel's own admission. In his covering email, counsel acknowledged that "[s]ome information may be missing, especially regarding projects done by workers. As noted in the discovery responses, the problem with nailing down some of the information is that cancelled checks with payment information and dates are missing. I've asked my client to contact the bank (account currently closed) to see if they can obtain this information." (Ex. B at 000007). Counsel gave no explanation for why he was taking these steps only after his discovery responses were already overdue.

18. In response to the discovery requests of Plaintiffs Fredy Zamorano and Mario Herrera Macurán, Defendants produced nothing at all. Counsel's covering email stated that he was still working on the responses to the requests of these two plaintiffs. (*See* Ex. B. at 000007).

19. Counsel's covering email stated that "I have to be somewhere between 10 and noon, but will try to get you the rest of the discovery by end of business today." (*See id.*)

20. Defendants sent no additional discovery.

21. Upon reviewing the responses that Defendants had sent, I found that they were deficient in numerous respects, even beyond those that counsel had acknowledged in his covering email.

I called Defendants' counsel that afternoon to address the deficiencies, and we agreed to confer the next day, Tuesday June 14.

22. On Tuesday afternoon, I conferred with Defendants' counsel by phone about the discovery responses. We spoke for about an hour and fifteen minutes, and we discussed each of the deficiencies in Defendants' responses. Defendants' counsel agreed to address each of them with his clients and provide complete, supplemented responses by close of business on Monday, June 20—a full two weeks past the date that the responses were already due under the Federal Rules.

23. On our call, I stated that I understood that Defendants were still in the process of getting copies of Plaintiffs' paychecks and other bank records, and that Defendants might not be able to get the copies of checks and other missing bank records by June 20, as Defendants' counsel estimated that it would take approximately one week for Defendants to retrieve them from the bank.

24. I made it clear to Defendants' counsel that, even if Defendants had not yet been able to retrieve the missing bank records by June 20, Defendants were still required to provide complete, sworn discovery responses for all six Plaintiffs by close of business on that date, based on all information available to Defendants at that time, or face a motion to compel.

25. The parties agreed that, if Defendants had not yet been able to retrieve the bank records by June 20—and only if their supplemental responses were complete in all other respects— Plaintiffs would hold off on filing the motion to compel, confer with Defendants about when the bank records would be forthcoming, and set deadlines for Defendants to serve a second set of supplemental responses reflecting the information contained in the bank records.

26. If, however, Defendants, did not submit complete, sworn discovery responses for all six Plaintiffs by close of business on June 20, based on all information available to Defendants at that time, I stated that Plaintiffs would file a motion to compel, with a hearing to be held on Friday July 1.

27. I memorialized this telephone conference in an email to Defendants' counsel that same day. (Ex. B at 000009–000012). The email listed each of the discovery inadequacies that we had discussed over the phone, along with Defendants' counsel's responses to each. (*See id.*) I asked Defendants' counsel to please let me know immediately if he disagreed with or had a different understanding about any part of my summation, or if I had left anything out. (*Id.* at 000009).

28. Defendants' counsel made no reply to this email.

29. At Defendants' counsel's request, I also emailed him a version of Plaintiffs' discovery requests in Microsoft Word, so that he could prepare Defendants' supplemented responses more easily. (Ex. B at 000014).

30. Defendants produced no additional discovery on June 20.

31. Defendants never served any objections to any of Plaintiffs' discovery requests, neither within the 15 days of service as required by Local Rule 26(C), nor at any other time.

ARGUMENT

**A. Legal standard.**

If a party fails to answer an interrogatory submitted under Rule 33 or fails to produce documents requested under Rule 34, the opposing party may move for an order compelling the delinquent party's answers and production. Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv). The party seeking discovery may also seek sanctions on the delinquent party, including the costs of

bringing the motion. Fed. R. Civ. P. 37(d)(1)(A)(ii) and (d)(3). In both cases, the movant must

certify that it has conferred or attempted to confer in with the delinquent party in good faith, in

an effort to obtain the answers and documents without judicial intervention. Fed. R. Civ. P.

37(a)(1) and (d)(1)(B).

**B. Defendants' discovery requests are deficient.**

### 1. *Plaintiffs Fredy Zamorano and Mario Herrera Macurán*

Plaintiffs Fredy Zamorano and Mario Herrera Macurán served interrogatories, requests

for admissions, and requests for production of documents on all Defendants on May 4, 2016.

(See Ex. A5–A6). After the parties' counsel conferred on the matter, Defendants agreed to

produce complete responses to these Plaintiffs' requests by June 20. (*See* Ex. B at 000009).

However, Defendants have still provided no responses whatsoever, and the Court should order

them to do so.

### 2. *Plaintiffs Roberto Claros, José Claros, Osbaldo Lopez, and Hector Antonio Andrade*

Defendants' counsel agreed to rectify following deficiencies after the parties' met and

conferred on June 14. Plaintiffs respectfully request that the Court order Defendants to provide

complete, sworn responses as required by the Federal Rules.

a. **<u>Interrogatory 1</u>**

- Interrogatory 1 asked each Defendant to provide their job title and a complete list of their

  job duties since 2010, any changes to those titles or duties, and the reasons for the

  changes. (*See* Ex. A1–A6 at 5).

- Defendants provided the information about job titles, but did not provide the information

  about job duties. (*See* Ex. C1–C4 at 5).

- Defendants agreed to provide a list of each Defendant's job duties, and to describe the changes to Defendant Miae Koo's job duties that occurred around February 2016. (Ex. B at 000009).

  b. **<u>Interrogatory 2</u>**

- Interrogatory 2 asked Defendants to list the owners of Sweet Home Improvements, Inc. since 2010; each owner's respective share of the business; any changes in that ownership share; and the reasons for the change. (Ex. A1–A6 at 6).

- Defendants identified the ownership of the company, but they did not describe each owner's share. (Ex. C1–C4 at 6).

- Defendants agreed to describe the change in Defendant Miae Koo's ownership interest in February 2016, and the reasons for the change. (Ex. B at 000009–000010).

  c. **<u>Interrogatory 3</u>**

- Interrogatory 3 asked Defendants to describe in detail the circumstances under which each Plaintiff was hired, including the dates, who was present, all relevant communications, and what it was that each person communicated to the others. (Ex. A1–A6 at 7)

- Defendants stated the approximate date that each Plaintiff was hired, but did not describe any of the communications that took place between the parties at the time of hiring. With the exception of Plaintiff Roberto Claros, Defendants also did not state who was present at the time of each Plaintiff's hiring. (*See* Ex. C1–C4 at 7).

- Defendants agreed to describe all of the parties' communications with each other, at the time of hiring, about the terms and conditions of each Plaintiff's work with Sweet Home.

(Ex. B at 000010). Defendants also agreed to describe who was present at the hiring of the other Plaintiffs. (*Id.*)

d. **Interrogatory 4**

- Interrogatory 4 asked Defendants to describe each location where each Plaintiff performed any work; the dates that he worked there; the work that he did there; any other duties, responsibilities, privileges, or obligations he had; and any changes to the foregoing. Ex. A1–A6 at 8).

- Defendants' Response
  - Defendants provided some information about three locations where Plaintiffs Roberto Claros and José Claros performed their work. But they provided no information about the third worksite apart from the property owner's name ("Mr. Martin"). Defendants provided no information about the dates that the Plaintiffs worked at these locations. (Ex. C1–C2 at 8).
  - Defendants provided no information about where or when Plaintiff Osbaldo Lopez performed any work for them. (Ex. C3 at 8);
  - Defendants mentioned one worksite in Glenarden, Maryland where Hector Antonio Andrade worked, but they provided no information about the dates he worked there. (Ex. C4);
  - Defendants stated that they kept carbon copies of each Plaintiff's paycheck, which state exactly when they worked and how much they were paid. Defendants identified a bank account with BB&T Bank in Burke, Virginia, on which Defendants paychecks were drawn. (Ex. C1 at 8). Defendants stated that "Sweet

Home Improvements cannot find or lost most of the work records which should be reflected in canceled/carbon copy checks and other documents." (Ex. C4 at 8).

- Defendants agreed to provide: (Ex. B at 000010)

  - The city/county and state where Plaintiffs Roberto and José Claros worked for "Mr. Martin";

  - The city/county and state of each location where Plaintiff Osbaldo Lopez and Hector Antonio Andrade performed any work for Defendants;

  - Descriptions of documents—and the documents themselves—that might help Defendants answer Interrogatory 4 in full, including:

    - Documents relating to the BB&T bank account;

    - Text messages or photographs from Defendants' cell phones; and

    - Copies of contracts between Defendants and the homeowners;

  - Full descriptions of any documents that Defendants claim were lost, in accordance with Plaintiffs' Interrogatory 19 and Instruction 7.

  e. **<u>Interrogatory 5</u>**

- Interrogatory 5 asked Defendants to state each Plaintiff's pay rate, the method by which he was paid (cash or check); and any changes to either of these. (Ex. A1–A6 at 9).

- Defendants provided each Plaintiff's pay rate and method by which he was paid. (Ex. C1–C4 at 9). But they did not provide any information about the assertions by Plaintiffs José Claros and Roberto Claros that, around the last two weeks of their employment, their wage rates changed from an hourly rate to a flat daily rate of $150 per day. (*See* ¶¶31 and 40 of Plaintiff's First Amended Complaint, ECF No. 5). (*See* Ex. C1–C2 at 9).

- Defendants agreed to supplement their responses to address these assertions. (Ex. B at 000010).

    f. **<u>Interrogatory 6</u>**

- Interrogatory 6 asked Defendants to provide each Plaintiff's start time, stop time, and break time each day. (Ex. A1–A6 at 10).

- Defendants' Responses:

    o Defendants' answers to Plaintiffs Roberto and José Claros's Interrogatory 6 describe in a general way the method by which Defendants determined how many hours these Plaintiffs worked on a given day or week. Defendants also admit that they failed to pay these Plaintiffs for certain periods of work that they performed. But Defendants do not state these Plaintiffs' actual start, stop, and break times each day, based on their personal knowledge. (Ex. C1–C2 at 10);

    o Defendants' answers to Osbaldo Lopez's Interrogatory 6 state his general work schedule but do not state his start time, stop time, and break time each day. (Ex. C3 at 10).

    o Defendants' answers to Hector Antonio Andrade's Interrogatory 6 instruct Plaintiffs to "see answer to Interrogatory 4." (Ex. C4 at 10). Defendants do not state what part of their answer to Interrogatory 4 is responsive to Plaintiffs' Interrogatory 6, and it is not obvious that any part of Interrogatory 4 is in fact responsive to it. The rest of Defendants' answer is not responsive to the question asked. (*See id.*)

- Defendants agreed to state their personal knowledge of each Plaintiff's start time, stop time, and break time for each workday. (Ex. B at 000010).

g. **Interrogatory 7**

- Interrogatory 7 asked Defendants to describe how they determined how many hours each Plaintiff worked on a given day or in a given week, how much pay he should receive as compensation (including whether he would receive overtime compensation), and any changes to either. Interrogatory 7 also asked for all persons involved in making those determinations, how that person made those determinations, and any relevant changes. (Ex. A1–A6 at 11).

- Defendants' Responses:

  o Defendants' responses to Plaintiffs Roberto and José Claros state, "See answer to Interrogatory 6." Defendants do not state which part of Interrogatory 6 they believe is responsive to Interrogatory 7. (Ex. C1–C2 at 11). Defendants' response continues, "The payments would be submitted to either Mr. Koo or Mrs. Koo." (*Id.*). It is not clear what "payments" Defendants are referring to.

  o Defendants' response to Plaintiff Osbaldo Lopez states, "See answer to Interrogatories 5 and 6." (Ex. C3 at 11). It is not clear which parts of Interrogatories 5 and 6 Defendants believe are responsive to Interrogatory 7. The response also states that "All work hours and compensation determination are made by Mr. Koo." (*Id.*). But it does not state *how* Mr. Koo determined Plaintiffs' hours and compensation, as called for by Interrogatory 7.

  o Defendants' response to Plaintiff Hector Antonio Andrade states, "See answer to Interrogatory 5. The payments would be submitted to Mr. Koo or Mrs. Koo." (Ex. C4 at 11). Defendants' response does not state which part of Interrogatory 5 they

believe is responsive to Interrogatory 7, and it is not clear what "payments" defendants are referring to.

- Defendants agreed to describe in detail (i) how they determined how many hours each Plaintiff worked on a given day or in a given week; (ii) how Defendants determined how much pay that Plaintiff should receive as a result, including whether to pay overtime pay; (iii) any relevant changes to either. Defendants also agreed to describe any lost documents in accordance with Plaintiffs' Interrogatory 19 and Instruction 7. (Ex. B at 000010).

### h. **Interrogatory 8**

- Interrogatory 8 asked Defendants to provide a week-by-week statement of each Plaintiff's gross pay; the method of payment (cash or check); any deductions from pay and the reasons for them; all persons who participated in paying him, and their role; and all persons with knowledge of any of these matters. (Ex. A1–A6 at 12).

- Defendants responded with cursory admissions that they owe Plaintiffs payment for certain weeks, and with cursory denials that they owe Plaintiffs payment for other weeks. (See Ex. C1–C4 at 12). But Defendants do not provide any of the week-by-week information asked for by this Interrogatory.

- Defendants agreed to provide the week-by-week information asked for by Interrogatory 8. (Ex. B at 000010–000011).

### i. **Interrogatory 9**

- Interrogatory 9 asks Defendants to identify each person who determined the wages that Plaintiffs would receive each week; each person who signed or who had the authority to sign their paychecks; and any changes to either of these. (Ex. A1–A6 at 13).

- Defendants responded that "Mr. Koo is responsible for determining wages and signs company checks." (Ex. C1 at 13). But Defendants do not state if Defendant Miae Koo had the authority to sign paychecks. (*See id.*)

- Defendants agreed to confirm whether Defendant Miae Koo had the authority to sign paychecks. (Ex. B at 000011).

  j. **Interrogatory 10**

- Interrogatory 10 asked Defendants to identify all persons who supervised or inspected Plaintiffs' work, or who had the authority to do so, and to describe the nature of that authority. (Ex. A1–A6 at 14).

- Defendants stated that "Mr. Koo is responsible for all job site work." (Ex. C1–C4 at 14). This general statement does not respond to the specific information asked for by this Interrogatory.

- Defendants agreed to describe the nature of Defendant Myung Kwan Koo's supervisory and inspection authority of the work done at Sweet Home job sites. (Ex. B at 000011).

  k. **Interrogatory 14**

- Interrogatory 14 asks Defendants to identify and describe all communications between Defendants and any third party regarding any Plaintiff; his work (including hours of work); his compensation; his termination or separation from work; this lawsuit; or the subject-matter of this lawsuit, including Defendants' pay practices in general. (Ex. A1–A6 at 18).

- Defendants responded: "Mr. Koo and Mrs. Koo talk to each other and are aware of most of company activities." (Ex. C1–C4 at 18). This general statement is not responsive to the Interrogatory, as it does not discuss any communications with third parties.

- Defendants agreed to state whether there is any third party (such as an accountant) with whom Defendants had any communications responsive to this Interrogatory. (Ex. B at 000011). If so, Defendants agreed to identify the third party and describe those communications. (*See id.*).

    l. **Interrogatory 15**

- Interrogatory 15 asks Defendants to describe in detail all communications they have had with each Plaintiff regarding his compensation, at any time. This includes communications regarding pay that the Plaintiff claimed not to have received. (Ex. A1–A6 at 19).

- Defendants' Responses:

    o Defendants responses to Plaintiffs Roberto and José Claros state "See answer to Interrogatory 6," without stating what portion of Interrogatory 6 they believe to be responsive to Interrogatory 15. (Ex. C1–C2 at 19). Defendants further state "Jose Claros would submit invoices of payment and Sweet Home improvements would pay the money." (*Id.*)  This general response does not respond to the specific information asked for by this Interrogatory.

    o Defendants' response to Plaintiff Osbaldo Lopez states, "See Answer to Interrogatory 4, 5, 6, and 8." (Ex. C3 at 19). The response does not state what portion of these answers Defendants believe to be responsive to Interrogatory 15, and the answer does not respond to the specific information asked for by this Interrogatory.

    o Defendants' response to Plaintiff Hector Antonio Andrade states, "See Answer to Interrogatory 4, 5, and 8." (Ex. C4 at 19). The response does not state what

-15-

portion of these answers Defendants believe to be responsive to Interrogatory 15, and the answer does not respond to the specific information asked for by this Interrogatory.

- Defendants agreed to describe all responsive communications, including where and when the communication took place, the nature of the communication, and who was present. (Ex. B at 00011).

  m. **Interrogatory 18**

- Interrogatory 18 asks Defendants to identify all individuals who have information or documents relevant to any party's claim or defense. (Ex. A1–A6 at 22).

- During the parties' meet-and-confer, Plaintiffs asked defendants to confirm if Defendants used the services of any other third party (for example, an accountant) who might have relevant information, and Defendants agreed to do so. (*See* Ex. B at 000011).

  n. **Interrogatory 19**

- Interrogatory 19 asks Defendants to identify any documents that would have been responsive to any of Plaintiff's Rule 34 requests for production, but that no longer exist. The Interrogatory asks Defendants to describe the contents of each such document, identify its authors and recipients, state the date when it was created, explain fully why the document no longer exists, identify anyone who was involved with or who knows about the document's destruction, and state each such person's knowledge or involvement. (Ex. A1–A6 at 23).

- Defendants' Responses:

  o Defendants' responses to Plaintiffs Roberto and José Claros states, "See answer to Interrogatory 6," without stating what part of that answer is responsive to

Interrogatory 19. (Ex. C1–C2 at 23). The response further states "The carbon copy checks that should have all payments made were lost and cannot be found." This general answer does not respond to the specific information asked for by Interrogatory 19.

- o Defendants' response to Plaintiff Osbaldo Lopez states, "See answer to Interrogatory 4,5, 6 8" without stating what part of those answers Defendants believe are responsive to Interrogatory 19. (Ex. C3 at 23). The response further states "Most records were lost or cannot be found at this time." This general answer does not respond to the specific information asked for by Interrogatory 19.

- o Defendants' response to Plaintiff Hector Antonio Andrade states, "See answer to Interrogatory 4 and 5," without stating what part of those answers Defendants believe are responsive to Interrogatory 19. (Ex. C4 at 23). The response further states "Most records were lost or cannot be found at this time." This general answer does not respond to the specific information asked for by Interrogatory 19.

- Defendants agreed to answer Interrogatory 19 in full. (See Ex. B at 000011).

  - o **Document Request 1**

- Document Request 1 asked for all documents related to each Plaintiffs' work, including payroll records, personnel records, tax records, wage statements, pay envelopes, ledgers, time cards or time sheets, work schedules, notes, cancelled checks, receipts, and contracts. Plaintiffs also asked for any other documents that might show each Plaintiff's daily start and stop time; the places, dates, and hours that he worked; his pay rate, gross wages, and deductions from wages; and his net pay. (Ex. A1–A6 at 27).

- Defendants responded, "Most records were destroyed or cannot be found at this time. Will supplement." (Ex. C1–C4 at 27). However, Plaintiffs' Instruction 7 and Interrogatory 19 required Defendants to describe all purportedly lost documents, and the circumstances surrounding their destruction, in detail. (*See* Ex. A1–A6 at 2 and 23).

- Defendants agreed to identify and describe all purportedly lost or destroyed documents in accordance with Instruction 7 and Interrogatory 9. (Ex. B at 000011). Defendants also agreed to search for copies of contracts made between Defendants and the owners of the properties where Plaintiffs performed any work for Sweet Home, and to produce these contracts if they are responsive to any of Plaintiffs' document requests. (*Id.* at 000012). (These contracts were referenced in Defendants' response to Plaintiffs' Interrogatory 16. *See* Ex. C1–C4 at 20). Defendants also agreed to produce documents related to a BB&T Bank account that Defendants identified as having potentially relevant information. (Ex. B at 000012).

    p. **Document Request 6**

- Document Request 6 asks for all documents related to Defendants' corporate status and ownership, such as articles of incorporation; a list of directors, officers, members, or managers of the company; meeting minutes; and documents relating to distribution of company profits. (Ex. A1–A6 at 27).

- Defendants stated that they provided those documents (Ex. C1–C4 at 27), but in fact they did not.

- Defendants agreed to provide the requested documents, including annual reports. (Ex. B at 000012).

q. **Document Request 7**

- Document Request 7 asks for all documents relating to government communications or findings regarding Defendants that concern or are related to labor rights. (Ex. A1–A6 at 27–28).

- Defendants stated that they provided those documents (Ex. C1–C4 at 28), but in fact they did not.

- Defendants' counsel stated that he was aware of some responsive documents related to at least one such government investigation or other action concerning workers' rights, and he agreed to provide those documents. (Ex. B at 000012).

r. **Document Requests 8 and 17**

- Document Request 8 asks for documents related to any worker's discussions, inquiries, or "complaints" (in the non-legal sense) about whether he or she was being paid properly. (Ex. A1–A6 at 28). Document Request 17 asks for documents regarding other wage-and-hour "complaints" in the legal sense, meaning complaints to a court, administrative agency, or other regulatory body. (*Id.*)

- Defendants stated that they had provided the documents responsive to these requests (Ex. C1–C4 at 28), but in fact they had not.

- After I clarified the distinction between these two requests, Defendants agreed to produce the documents responsive to both of them. (Ex. B at 000012).

s. **Document Request 16**

- Document Request 16 asks for all documents on which any Plaintiff's name or other personal identifier appears. (Ex. A1–A6 at 28).

- Defendants stated that they had provided the documents responsive to this request. (Ex. C1–C4 at 28). At the meet-and-confer, however, Defendants' counsel asked for clarification as to the scope of this request.

- I confirmed that the Document Request means what it says: if there is a document with a Plaintiff's name or other personal identifier on it, it must be produced. Defendants' counsel started to raise a vagueness/overbreadth objection; I noted that the objection was untimely, but confirmed that Plaintiffs' request was of course limited to documents within the scope of discovery. Defendants agreed to produce the documents. (Ex. B at 000012).

## C. Plaintiffs have made numerous efforts to resolve this matter without the Court's intervention.

We are now in the third week of Defendants' delinquency, and Defendants have given no sign that they will comply with Plaintiffs' discovery requests absent judicial intervention. Plaintiffs have reached out to Defendants' counsel numerous times, given Defendants multiple opportunities to avoid a motion to compel, and have made every effort to resolve the issues promptly without Court involvement. Despite all of these efforts, however, Defendants have still produced no discovery responses at all in response to the requests of two Plaintiffs, and have produced inadequate and incomplete answers in response to the requests of the other four.

CONCLUSION

There being no indication that Defendants will comply with their discovery obligations without a court order, Plaintiffs now move to compel Defendants' responses without further delay. If the motion is granted—or if Defendants provide their complete responses in advance of the hearing—Plaintiffs respectfully request that the Court require Defendants' to pay Plaintiffs' expenses in bringing the motion, per Fed. R. Civ. P. 37(a)(5)(A).

Respectfully submitted,


//s// Nicholas Cooper Marritz                                    Date: June 22, 2016
Nicholas Cooper Marritz (VSB No. 89795)
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Tel: (703) 720-5607
Fax: (703) 778-3454
nicholas@justice4all.org
*Attorney for Plaintiffs*

**Certificate of Service**

I hereby certify that on June 22, 2016, I uploaded the foregoing Memorandum in Support of Plaintiff's Motion to Compel Discovery, and its accompanying exhibits, to the Court's CM/ECF system, which will cause a Notice of Electronic Filing to be sent to all counsel of record. I also sent copies to Defendants' counsel by U.S. mail and email, at the following address:

> Jason Jin Huh
> Law Office of Jason J. Huh, PLLC
> 4101 Chain Bridge Road, Suite 214
> Fairfax, VA 22030
> attorneyhuh24@gmail.com
> *Counsel for Defendants*

//s// Nicholas Cooper Marritz                                         Date: June 22, 2016
Nicholas Cooper Marritz (VSB No. 89795)
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Tel: (703) 720-5607
Fax: (703) 778-3454
nicholas@justice4all.org
*Attorney for Plaintiffs*