IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

ROBERTO CLAROS, et al.,

      Plaintiffs,

        v.

SWEET HOME IMPROVEMENTS, INC.,
et al.,

      Defendants

Case No. 1:16-cv-344-AJT-MSN

## Hector Antonio Andrade's First Set of Discovery Requests to All Defendants

### General Instructions

Please answer the following discovery requests in accordance with the Federal Rules of Civil Procedure, the local rules of this court, the various scheduling orders and other orders entered in this case, and the following instructions.

1. *Defendants Must Answer Separately*: Each defendant must answer interrogatories and requests for admission separately, and under penalty of perjury. Although some defendants' responses to a given interrogatory or request for admission may be identical, each defendant must answer in full, rather than stating words to the effect of "See answer of [another defendant]."

2. *Manner of Answering*. In answering these discovery requests, you must identify and disclose all of the information and all of the documents that are known or available to you, your attorneys, your agents, or any of your other representatives. If you are unable to answer any discovery request in full, please explain why you are unable to answer it, state the nature of the information or documents you cannot furnish, and answer to the fullest extent possible. If your answers are qualified in any manner, state the nature of the qualification.

3. *In Case of Ambiguity*. If in responding to these discovery requests you encounter any ambiguity in construing any request, interrogatory, instruction or definition, you must still respond to it. State specifically the matter deemed ambiguous the construction you used in responding. Rather than objecting to a request as "vague" or "ambiguous," you are invited to contact Plaintiffs' counsel to discuss a mutually-agreeable definition of the purportedly vague or ambiguous terms.

1



4. *Relevant Time.* Unless otherwise stated, all discovery requests encompass the time beginning from the date of this Plaintiff's first contact with any of the defendants, and extend to the present day.

5. *Objections.*

   a. If you object to part of a discovery request, state the objection and respond to the remaining portion of that interrogatory or request.

   b. If you object to the scope or time period of a discovery request, state the objection, state the scope or time period that you believe is appropriate, and respond to the request within the scope or time period you believe is appropriate.

   c. If you object to a discovery request upon a claim of privilege, attorney work product, or any other basis, please (i) identify each piece of information or document you are withholding; (ii) state the nature of the privilege asserted; and (iii) provide the following information:

      i. A description of each subject discussed, described, or referred to in the document or information;

      ii. All author(s), addressee(s), present custodian(s), and date(s) of the document or information;

      iii. All other persons who have seen or learned about all or part of the document or information; and;

      iv. The method by which, and reason why, each of these persons obtained access to the document or information;

6. *Identification of Persons Assisting with Answers.* In answering each interrogatory, identify each person who assisted you in preparing the answer, or who provided information or documents contained in the answer. If the information or document is obtained from another person or source, identify the source.

7. *Lost or Destroyed Documents.* If any document that related to any issue addressed in these discovery requests has been lost, discarded, or destroyed, please provide a list identifying each such document as completely as possible. This includes, without limitation, the following information: all authors and addressees; each person to whom copies of the document were furnished or to whom the contents of the document were communicated; a summary of the substance of the document; the date or approximate date of its creation; the date or approximate date that it was lost, discarded or destroyed; the manner in which it was lost, discarded, or

destroyed; the reason it was lost, discarded, or destroyed; the person(s) authorizing its discard or destruction; and the person(s) who lost, discarded, or destroyed the document.

8. *Continuing Nature of Discovery Request.* These interrogatories and discovery requests are continuing in character and to require you to promptly amend or supplement your response if you obtain further material information in accordance with Fed. R. Civ. P. 26(e).

9. *Manner of Producing Documents.*

   a. Documents that exist only in hard copy shall be produced in hard copy. Documents that exist only in electronic format shall be produced only in electronic format. Documents that exist both in hard copy and in electronic format shall be produced in both formats, unless plaintiff's counsel specifically agrees otherwise after discussion. You are invited to contact plaintiff's counsel to discuss the means of production of any documents that exist in both hard copy and electronic format, prior to producing any such documents.

   b. One legible copy of each document requested is to be produced. Any copy of a document that varies in any way whatever from the original or from any other copy of the document, whether by reason of handwritten or other notation or any omission, shall constitute a separate document and must be produced. Plaintiff reserves the right to inspect the original of any document produced upon reasonable request.

   c. For each document you produce, specifically identify each of the document requests to which it is responsive.

   d. In producing the documents, all documents which are physically attached to each other shall be left so attached. Documents which are segregated or separated from other documents, whether by inclusion in binders, files, subfiles, or by use of dividers, tabs, or other methods, shall be left so segregated or separated. Documents shall be retained in the order in which they are maintained in the file where they are found. For all documents that are double-sided, both sides shall be produced.

   e. All requests for computerized data are to be produced in a computer-readable format. Where any information, be it source code, data, documents or other information, exists primarily or exclusively on computer media, it must be produced as computer media rather than being printed out. The computerized or electronic databases shall be produced in a format that is useable by plaintiff. Each requested database shall be produced along with all software or programming necessary to read and/or sort and manipulate the data, unless such software or programming is readily commercially available (*e.g.* Adobe PDF; Microsoft Office).

10. *Possession, Custody, Control.* Where these requests seek documents or things in the possession, custody, or control of any individual, firm, corporation, or partnership, the request also extends to

documents or things in the possession, custody, or control of employees, agents, guardians, partners, representatives, and, unless privileged or protected, attorneys of such individuals, firms, corporations, or partnerships.

11. *Segregable Portions of Privileged Documents.* If claim that a responsive document is privileged, identify and produce all segregable portions of the document to which the claim of privilege, attorney work product, or other basis for withholding the document does not apply.

12. *Burdensomeness.* If a refusal to produce documents is stated on the ground of burdensomeness, identify the number and nature of documents needed to be searched, the location of the documents, and the number of person-hours and costs required to conduct the search.

13. *Dates.* If a discovery request asks about a date, and you do not know the exact date, state so explicitly, state your best approximation of the date, and use that approximation in answering.

14. Please answer all interrogatories in a non-conclusory manner, providing as much detail as reasonably possible.

15. If any document exists in a foreign language, please also provide the certified English translation of that document on which you intend to rely at trial.

16. *Answers Must Be Signed.* Your discovery responses must be signed in accordance with Rule 26(g). By signing, you certify that your disclosures are complete and correct.

## Interrogatories

1. Please state your current job title and list all of your job duties. State your past job titles and past job duties since January 1, 2010. If your job title or duties changed during this time, describe the change, state when it occurred, and state why it occurred.

Answer:

Myung Koo worked as a subcontractor, working mostly on windows for Centroval Window for approximately five years beginning in 2005.

On Febrary 2, 2011, Myung Koo started Sweet Home Improvements, Inc., as a general contractor. He is the owner and director/president of the company.

Mi Ae Koo - is a wife of Mr. Koo and worked as a housewife until Mr. Koo established Sweet Home Improvements, Inc. in February 2011. She was an owner and director of the company until February 2016. She is no longer an officer/director of the company but still acts as the office manager, which she has held since the beginning of company formation.

2. Please identify all persons who have or had an ownership interest in Sweet Home Improvements, Inc., or in any of its parent or subsidiary business organizations, from January 1, 2010 to the present day. For each person identified, state that person's ownership interest in detail and state their precise share of the business. If any such person's ownership interest or share of the business changed during this time, describe the change, state when it occurred, and state all reasons why it occurred.

Answer:

Myung Koo and Mi Ae Koo have ownership of the company. See answer to Interrogatory 1.

3. Please describe in detail the circumstances under which Hector Andrade was hired. State all relevant dates, identify who was present, describe all relevant communications, and state what each person communicated to the others.

Answer:

Mr. Andrade was hired around March 28, 2015. He was hired to do tile and some painting work. He also performed some plumbing work on a project.

4. Please describe:

   a. Each location where Hector Andrade performed any work for you;
   b. The dates that he performed the work at each location;
   c. The work that he performed at each location; and
   d. Any other duties, responsibilities, obligations, and privileges that he had, or tasks he performed for you, whether at a specific location or in general.

If Hector Andrade's work, job duties, or other responsibilities changed at any time, please answer separately as to each time period, describing when the change took place; who authorized the change; and all reasons why the change occurred.

<u>Answer:</u>

As with other Plaintiffs in this litigation, Sweet Home Improvements cannot find or lost most of the work records which should be reflected in canceled/carbon copy checks and other documents. There was once incident, Thomas Ferguson project in Glenarden, Maryland, where he did some plumbing work that resulted in plumbing pipes exploding due to faulty installation and significant damage to owner's house which Sweet Home Improvements had to pay.

5. Please state Hector Andrade's agreed-upon rate of compensation and the method by which he was compensated (e.g. check or cash.) If he was compensated by more than one method, please describe fully (e.g., how much was in check and how much in cash). If the plaintiff's agreed-upon pay rate or method of payment changed at any time, state when the change occurred, the persons who authorized the change, and all reasons the change occurred.

Answer:

The agreed upon rate was $22/hour. Worked no more than 40 hours per week, with 30 minutes lunch. He was paid with company checks. There was no formal pay stubs or W-2. He worked as independent contractor on sporadic projects with the company.

6. For each day that Hector Andrade worked for you, please state:

    a. The time at which Hector Andrade began performing the work you hired him to perform, or the time you required him to be on duty and ready to receive instructions from you, whichever is earlier; and

    b. The time at which Hector Andrade stopped performing the work you hired him to perform, or the time you released him from duty and that he no longer had to be ready to receive instructions from you, whichever is later.

    c. The length of any lunch or other regular breaks taken during that day.

Answer:

See answer to Interrogatory 4. Lunch is 30 minutes.
In April 2015, Mr. Andrade was in a fight with other helpers. He would always fight with other helpers and it was very difficult working with him. Some of the helpers even quit and left because of Mr. Andrade behavior.
In April 2015, Mr. Andrade was working on some plumbing work for Thomas Ferguson at Glenaden, Maryland. Mr. Andrade was installing a jacuzzi in the master bathroom. However, he was negligent in installing the pipes and the pipes eventually exploded. The water damage was significant, and damaged electric work and roof and ceiling areas. Mr. Andrade said he would come back to fix the problem, but never showed up.
Sweet Home Improvements had to hire master electricians and plumbers to redo the faulty work. Mr. Ferguson asked that Mr. Andrade stop work at his house and total damages was around $14,800.

7. Please describe in detail the means by which you determined how many hours Hector Andrade worked on a given day or in a given week, and how much pay he should receive as compensation, including whether he should receive overtime compensation for any hours he worked beyond 40 in a given week. Identify all persons involved in making those determinations, and describe the nature and extent of their involvement. including all facts, law, guidance, or any other considerations relied on. If the answer changed at any time during the relevant period, describe when the change took place; who authorized the change; and all reasons for the change.

Answer:

See answer to Interrogatory 5. The payments would be submitted to either Mr. or Mrs. Koo

8. For each workweek that Hector Andrade worked for you, please state:

   a. The actual gross pay he received for that week;
   b. The method of payment (e.g. check or cash). If he was paid by more than one means in a particular week, state how much he was paid by which method (e.g., how much he received by check and how much he received as cash);
   c. Any deductions from his pay, and the reason or basis for those deductions;
   d. Any individuals who participated in paying him, and their role; and
   e. Any individuals with knowledge of any these matters.

   Answer:

   All request for payment were paid, except for May 4 - May 10, for 51 hours, and May 11 - may 17 for 53 hours.

9. Please identify each person who determined the wages that Hector Andrade should receive in each paycheck, and each person who signed or who had the authority to sign his paychecks during his tenure with Sweet Home. As part of your answer, if any of the foregoing changed at any time during Hector Andrade's tenure, please answer separately as to each time period, describing when the change took place; who authorized the change; and for what reasons the change was authorized.

Mr. Koo is responsible for determining wages/payments and signs company checks.

10. Please identify all persons who supervised or inspected Hector Andrade's work at any time during his tenure at Sweet Home, or who had the authority to do so. Describe the nature of the nature of their supervisory or inspection authority. As part of your answer, if any of the foregoing changed at any time during Hector Andrade's tenure, please answer separately as to each time period, describing when the change took place; who authorized the change; and for what reasons the change was authorized.

Answer:

Mr. Koo is responsible for all job site work.

11. Please identify any individuals supervised by Hector Andrade, and describe the nature of his supervisory responsibilities. As part of your answer, if any of the foregoing changed at any time during Hector Andrade's tenure, please answer separately as to each time period, describing when the change took place; who authorized the change; and for what reasons the change was authorized.

Answer:

Mr. Koo is responsible for all assignment and supervision of work on the project. Sometimes Mr. Andrade would be provided with helpers to assist him on certain projects. However, he fought with these helpers a lot and there were ongoing problems with him and helpers which Mr. Koo had to manage and resolve.

12. Please describe all acts of misconduct or inadequate performance that Hector Andrade committed at any time during his tenure, and describe any disciplinary or corrective actions that were taken against him as a result. As part of your answer, please identify who was responsible for deciding and/or carrying out the disciplinary or corrective actions, and describe why that person made the decision that they did.

Answer:

See answer to Interrogatory 6.

13. Please identify all persons who had the authority to discipline or terminate Hector Andrade during his tenure with Sweet Home. As part of your answer, if any of the foregoing changed at any time during Hector Andrade's tenure, please answer separately as to each time period, describing when the change took place; who authorized the change; and for what reasons the change was authorized.

Answer:

Mr. Koo is responsible for hiring and firing of workers at Sweet Home Improvements.

14. Please identify and describe all communications that you have had with any third party regarding any Hector Andrade; his work (including his hours of work); his compensation; his termination or separation from work; this lawsuit; or the subject-matter of this lawsuit, including your pay practices in general.

Answer:

Mr. and Mrs. Koo talk to each other and are aware of most of company activities.

15. Please describe in detail all communications that you have had with Hector Andrade regarding his compensation, at any time. This includes any communications regarding pay that Hector Andrade claimed not to have received. Please state exactly when and where the communication took place, the nature of the communication, and who was present.

Answer:

See answer to Interrogatory 4, 5 and 8.

16. Please describe in detail any means or processes by which Hector Andrade was supposed to get supplies he needed for the work he was performing for you that day, describe how those supplies would be paid for, and identify all persons who had the authority to authorize those payments.

Answer:

Mr. Andrade is only responsible for labor. All materials are provided either by owner or contractor per terms of the contract agreement.

17. For each location where Hector Andrade performed any work for you, please identify all persons who were present at that location at the same time as Hector Andrade, whether or not they were working alongside him, and state the dates that both they and Hector Andrade were present at that location. Include all persons who were not working for Sweet Home (such as the owners of the property where the work was being performed; their agents; their guests; or their family members). For each such person, please provide all known contact information. For persons who were working for Sweet Home, please identify them as a Sweet Home worker and provide their job title and the type of work they were performing at the time.

<u>Answer:</u>

Mr. Koo was present at all work site and supervised Mr. Andrade. Mr. Osbaldo Lopez was called upon to assist in the Ferguson project after Mr. Andrade promised to come and fix the problem but never showed up.

18. Please identify all individuals who have information or documents relevant to Hector Andrade's claims or Defendants' defenses to those claims. Describe, in reasonable detail and in a non-conclusory manner, the information and documents identified.

Answer:

Mr. and Mrs. Koo.

19. Please identify any documents that would have been responsive to one or more of Plaintiffs' requests for production of documents, but that no longer exist. Describe the contents of each such document, identify all authors and recipients, state when the document was created, and explain fully why the document no longer exists. Identify any individuals who were involved with or have any knowledge of the destruction of that document, and fully explaining that individual's knowledge or involvement.

Answer:

See answer to Interrogatory 4 and 5. Most records were lost or cannot be found at this time. Investigation is ongoing and Defendants reserve the right to supplement this answer.

20. If you relied on any outside source (whether a person, a document, or anything else) to determine or ensure that your payroll practices complied with federal, state, or local law, please identify all such sources, and describe fully the nature of the advice or guidance you received from that source. If the source is written, produce the document in full. As part of your answer, specifically identify all occasions on which you consulted each source, and identify and produce any documents that you provided to that source. As part of your answer, if you maintained or made available any labor/employment law posters, or other similar postings, provide a copy of all such posters or postings, and describe in detail where and when they were posted, and by whom.

Answer:

All payroll record keeping and processing was done by Mrs. Koo.

I declare, under penalty of perjury of the laws of the United States, that my answers to Plaintiff Hector Andrade's First Set of Interrogatories are true and correct. 28 U.S.C. § 1746(2).

Name: _Sweethome improvements presidents Myung Kwan Koo_

Signature: _[signature]_

Executed on (date): _6/10/16_

_[signature]_
Myung Koo

_[signature]_
Mi Ae Koo

25

## Requests for Admission

Plaintiffs hereby request each Defendant to admit or deny the following statements separately and in writing, pursuant to Fed. R. Civ. P. 36.

1.  You were Hector Andrade's "employer" within the meaning of the FLSA.

Answer: _No_

2.  Hector Andrade was your "employee" within the meaning of the FLSA.

Answer: _No_

**I declare under penalty of perjury that my answers to the foregoing Requests for Admission are true and correct. 28 U.S.C. § 1746(2).**

**Name:** _Sweethome improvements Presidents_ _Myung Kwan Koo_

**Signature:** _____

**Executed on (date):** _6/10/16_

_Myung Koo_

_Mi Ae Koo._

26

## Document Requests

Please produce the following documents:

1. All documents regarding any Plaintiff's work, including but not limited to payroll records, employee or independent contractor personnel records (including W-4 forms, W-2 forms, and IRS-1099 forms), wage statements, pay envelopes, ledgers, time cards or time sheets, work schedules, correspondence, notes and notations (including those made on tablets and notebooks), canceled checks, receipts, employment contracts or agreements, and any other writings evidencing or tending to evidence any of the following information with regard to the labor of any Plaintiff:

   a. The daily starting and stopping time of any labor performed;
   b. Type of work performed;
   c. Location where work was performed;
   d. Dates worked;
   e. Hours worked;
   f. Wage rate(s);
   g. Gross wages;
   h. All withholdings from wages, and the purpose for each such withholding; and/or
   i. Net pay.
   Most records were destroyed or cannot be found at this time. Will supplement if found.

2. All documents reviewed in the preparation of your answers to the foregoing interrogatories and/or requests for production, and all documents referred to or identified in your answers.
   Provided.

3. Each Plaintiff's entire employee file.
   There are no official employee file.

4. All documents regarding personnel or compensation policies, including but not limited to any employee handbooks.
   None.

5. Any documents to, from, about, or pertaining to any Plaintiff, his work, his compensation, or his separation from work with Sweet Home.
   None.

6. All documents related to your corporate status and ownership, including articles of incorporation; documents reflecting names of officers, directors, and/or managing members of the company; minutes or other notes of board meetings or meetings of officers, directors, and/or managing members; documents reflecting the ownership, sale, and purchase of interests in the company; and documents showing the frequency, value, and recipient(s) of loans or distributions of profits made by the company.
   Provided.

7. All documents related to each instance since January 1, 2010 to the present day in which you have been contacted, reviewed, interviewed, examined, investigated, cited, warned, or have been the subject of any finding or action by the United States Department of Labor, a state employment service or department of labor, or other agency of state, federal, or local

government, related to compliance with laws concerning or relating to workers' rights, including but not limited to laws concerning minimum wage, overtime or other compensation.
Provided.

8. All documents related to each instance since January 1, 2010 in which any current or former worker discussed, complained, or inquired about whether he or she was being paid properly.
Provided.

9. Any document written or signed by any Plaintiff related in any way to his work for you or related to the subject matter of this litigation.
Provided.

10. Any and all affidavits, statements, notes of conversations, and correspondence related to this litigation or concerning the subject matter of this litigation that are not privileged or otherwise protected from disclosure, whether signed or transcribed formally or informally without signature.
Provided.

11. All non-privileged documents, including electronic mail and other electronic records, which refer to, reflect or in any way relate to this lawsuit and/or the substance of the claims or defenses raised in this lawsuit.
None.

12. All documents identified, requested to be identified, reviewed, described in, or relied upon in connection with your Rule 26 Initial Disclosures;
Provided.

13. All documents that you contend support your defense of this action.
None at this time. Investigation ongoing.

14. All documents that you obtain or have given to or obtained from any third party regarding the subject-matter of this litigation.
None.

15. A copy of any insurance policy that would cover a judgment or settlement in this action.
None.

16. All documents which have any Plaintiff's name or other personal identifier on them.
None.

17. All documents regarding or pertaining to any previous wage-and-hour complaints made by any former workers from January 1, 2010 to the present.
Provided.

18. All documents reviewed in preparing your answer to the complaint or amended complaint.
Provided.

19. All documents reviewed in connection with preparing your answers to this discovery.
Provided.

<u>**Appendix: Definitions**</u>

As used in these discovery requests, the following terms are to be interpreted in accordance with these definitions:

1. The terms *"person"* or *"persons"* mean any natural person, alive or deceased, any firm, partnership, joint venture, joint stock company, unincorporated association or society, municipal or other corporation, any state, its agencies or political subdivisions, any court, the Federal Government, any other government entity, or any form of legal entity.

2. The terms *"policy or procedure," "policies,"* and *"procedures"* mean written or formal rules, as well as practices, customs, policies, and usages that may not have been officially approved, reduced to writing or otherwise formalized.

3. The terms *"document"* or *"documents"* mean the original and all non-identical copies of written, recorded, graphic or other matter, however produced or reproduced, including, but not limited to, all items stored on computer systems, phones, tablets, notes, letters, emails, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, diaries, graphs, reports, notebooks, charts, plans, drawings, sketches, maps, summaries or reports of investigations or negotiations, opinions or reports of consultants, photographs, videos, movies, electronic transmissions, social media posts, brochures, pamphlets, advertisements, circulars, press releases, drafts, and all other writings.

4. The term *"communication"* means oral communications, correspondence, memoranda, reports, records of telephone calls, records or minutes of any meeting, emails, and all other forms of oral or written expression by which information may be conveyed. When asked to identify or describe a communication, please answer by stating, in as much detail as reasonably possible, who said what to whom; where and when the communication took place; and, to the best of your knowledge, who else was present to observe or overhear the communication. Alternatively, if the communication is in writing, produce the communication.

5. The terms *"relating to," "concerning,"* or *"regarding"* mean referring to, involving, pertaining to, constituting, comprising, containing, setting forth, showing, disclosing, describing, explaining, summarizing, or bearing upon.

6. The words *"and"* and *"or"* are intended to be construed conjunctively or disjunctively as necessary to make the discovery request inclusive rather than exclusive.

7. To *"identify"* a person means to provide the name of that person, <u>all</u> known addresses, telephone numbers, e-mail addresses, and social media accounts for that person (including but not limited to home and personal addresses and telephone numbers), and, if the person is or ever was an employee, officer, or agent of any defendant, state the dates of that person's tenure and describe that person's job title(s).

8. The term *"worker"* shall include all employees, independent contractors, and agents.

9. The singular form shall be deemed to apply to the plural where applicable, and vice versa.

10. The word "including" means "including but not limited to."

Respectfully submitted,

LEGAL AID JUSTICE CENTER

By: _____     Date: May 4, 2016
Nicholas Cooper Marritz (VSB No. 89795)
Simon Y. Sandoval-Moshenberg (VSB No. 77110)
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Ph: (703) 778-3450 x 607
Fax: (703) 778-3454
nicholas@justice4all.org
*Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

ROBERTO CLAROS, et al.,

        Plaintiffs,

        v.

SWEET HOME IMPROVEMENTS, INC.,
et al.,

        Defendants

Case No. 1:16-cv-344-AJT-MSN

### Certificate of Service

I certify that today I served a copy of Plaintiff Hector Antonio Andrade's First Discovery Requests to All Defendants by first-class U.S. mail and email to Defendants' counsel:

> Jason J. Huh
> Law Office of Jason J. Huh, PLLC
> 4101 Chain Bridge Road, Suite 214
> Fairfax, VA 22030
> attorneyhuh24@gmail.com

*//s//* Nicholas Cooper Marritz
Nicholas Cooper Marritz (VSB No. 89795)
Simon Y. Sandoval-Moshenberg (VSB No. 77110)
Legal Aid Justice Center
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
T: (703) 778-3450 x 607
F: (703) 778-3454
E: nicholas@justice4all.org

Date: May 4, 2016