UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

|  |  |
|---|---|
| ROBERTO CLAROS et al.,<br><br>*Plaintiffs,*<br><br>v.<br><br>SWEET HOME IMPROVEMENTS, INC.,<br>et al.,<br><br>*Defendants* | **Case No:** 1:16-CV-344-AJT-MSN<br><br>**Hearing Date**: October 14, 2016<br>10:00 a.m. |

## Memorandum in Support of Motion for Summary Judgment By Plaintiffs José Claros, Roberto Claros, and Hector Andrade

### Summary of the Case

Defendant Sweet Home Improvements, Inc. ("Sweet Home") is a Virginia corporation that provides residential construction and renovation services to customers in Virginia, Maryland, and the District of Columbia.[1] The corporation's day-to-day operations are run by its two principals, Defendants Myung Koo and Miae Koo.[2] The Plaintiffs in this case, José Claros, Roberto Claros, and Hector Andrade,[3] worked for Sweet Home as hourly laborers in 2015, performing construction and remodeling work for Sweet Home clients on a full-time basis.[4] But

---

[1] Plaintiffs' Statement of Facts ("PSF") ¶1.

[2] PSF ¶2.

[3] This lawsuit originally included three additional Plaintiffs: Osbaldo Lopez, Fredy Zamorano, and Mario Herrera Macurán. (*See* Amended Complaint, ECF No. 5). Defendants entered into a settlement agreement with these three Plaintiffs (*See* ECF No. 37), which the Court has approved. (ECF No. 42).

[4] PSF ¶3.

after Defendants failed to pay Plaintiffs for weeks of work that they had performed,[5] Plaintiffs brought this lawsuit to recover the unpaid wages and other relief due them under the federal Fair Labor Standards Act and Virginia contract law. For the reasons that follow, Plaintiffs now seek summary judgment on all of their claims.

**Legal Standard**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Groves v. Communication Workers of Am.*, 815 F.3d 177, 181 (4th Cir. 2016), quoting Fed. R. Civ. P. 56(a).

Defendants will be unable to dispute many of Plaintiffs' facts at trial: due to Defendants' persistent disobedience of the Court's discovery orders, the Court has barred Defendants from producing any evidence to contradict Plaintiffs' evidence regarding which weeks they worked and how much they were paid. (Order, ECF No. 45). Defendants have also opted not to name any witnesses or exhibits for use at trial; Defendants can hold Plaintiffs to their burden of proof, but they will not be able to put on an affirmative case of their own. (*See* Scheduling Order, ECF No. 11—witnesses and exhibits not disclosed by September 15 may not be used at trial except for impeachment or rebuttal).

As set forth below, the uncontroverted (or uncontrovertable) evidence shows that there is no genuine issue of material fact for trial, and Plaintiffs are entitled to summary judgment on all of their claims.

---

[5] PSF ¶¶33 and 36.

## ARGUMENT

### Claims 1 & 2: Fair Labor Standards Act

Claims 1 and 2 of Plaintiffs' complaint seek damages and other relief for Defendants' minimum-wage and overtime violations under the federal Fair Labor Standards Act. As demonstrated below, the undisputed evidence shows that:

- Defendants violated the FLSA;

- All Defendants are jointly and severally liable for those violations as "joint employers"; and

- Plaintiffs have proven their damages with specificity.

With the facts and law decisively on their side with regard to both liability and damages, Plaintiffs now seek summary judgment on the entirety of their FLSA claims.

**I. Plaintiffs have proven their FLSA claims for unpaid minimum wages and overtime.**

The Fair Labor Standards Act establishes federally-mandated minimum and overtime wages for all workers it covers. FLSA wage claims have four elements. To prevail, a plaintiff must prove that:

(1) the defendant "employed" the plaintiff under the Act;

(2) the defendant's business has sufficient links to interstate commerce;

(3) during at least one workweek, the defendant failed to plaintiff the minimum wages or overtime that the Act requires; and

(4) the plaintiff's work did not fall under any of the FLSA's statutory exemptions.

*See* 29 U.S.C. §§ 206–207; *Dutan v. Sheet Metal Remodeling, LLC*, 48 F. Supp. 3d 860, 868 (E.D. Va. 2014). Because Plaintiffs' evidence on all four of these points is not reasonably disputable (or will be undisputable at trial , Plaintiffs now seek summary judgment on their FLSA claims as a matter of law.

**A.  Defendants "employed" the Plaintiffs under the FLSA.**

The FLSA's minimum-wage and overtime requirements apply only to "employees." 29 U.S.C. §§ 206–207. Under the FLSA, the word "employ" includes "to suffer or permit to work," *id.* at § 203(g), which then-Senator Hugo Black approvingly called "the broadest definition that has ever been included in any one act." *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945), *quoting* 81 Cong. Rec. 7657.[6] As the Fourth Circuit recently explained:

> To determine whether a worker is an employee under the FLSA, courts look to the "economic realities" of the relationship between the worker and the putative employer. The touchstone of the "economic realities" test is *whether the worker is economically dependent on the business to which he renders service or is, as a matter of economic reality, in business for himself.*
>
> Application of the test turns on six factors:
>
> 1. The degree of control that the putative employer has over the manner in which the work is performed;
>
> 2. The worker's opportunities for profit or loss dependent on his managerial skill;
>
> 3. The worker's investment in equipment or material, or his employment of other workers;
>
> 4. The degree of skill required for the work;
>
> 5. The permanence of the working relationship; and
>
> 6. The degree to which the services rendered are an integral part of the putative employer's business.

*McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235, 240 (4th Cir. 2016) (emphasis added).

---

[6] The FLSA also purports to define "employer" and "employee," but the definitions are circular and unhelpful: an "employer" includes anyone acting "in the interest of an employer in relation to an employee," and an "employee" is "any individual employed by an employer." 29 U.S.C. § 203(d) and (e).

Ultimately, however, no one factor is dispositive, and the determination turns on "the facts and circumstances of the whole activity." *Id.* Here, those facts and circumstances show conclusively that Plaintiffs were employees, rather than independent contractors, under the Act.

    **1. Defendants exerted a high degree of control over the manner in which the Plaintiffs performed their work.**

The more control that Defendants exercised over Plaintiffs' work, the more likely that they were FLSA employees rather than independent contractors.

Defendants exercised a high degree of control over Plaintiff José Claros's work. His supervisor was Defendant Myung Koo.[7] As his supervisor, Mr. Koo communicated with José Claros every day, multiple times a day, by telephone, text message, or in person.[8] Mr. Koo chose the sites where José Claros would work each day,[9] and he visited those job sites every day.[10] He monitored the progress of José Claros's work.[11] And he examined José Claros's work for errors.[12] This significant degree of control favors a finding that José Claros was Defendants' employee.

Defendants exercised significant control over Plaintiff Roberto Claros's work as well. Roberto Claros always worked alongside his brother, José.[13] As with José Claros, Mr. Koo was Roberto Claros's supervisor.[14] Mr. Koo usually transmitted his supervisory instructions to Roberto through José, because José and Mr. Koo speak English while Roberto does not.[15] But despite the

---

[7] PSF ¶4.

[8] PSF ¶5.

[9] PSF ¶6.

[10] PSF ¶7.

[11] PSF ¶8.

[12] PSF ¶9.

[13] PSF ¶10.

[14] PSF ¶11.

[15] PSF ¶12.

language barrier, Mr. Koo remained responsible for all supervision on the Claros brothers' projects, and everyone answered to Mr. Koo.[16] Thus, this factor favors a finding that Roberto Claros was also Defendants' employee.

Mr. Koo was Plaintiff Andrade's supervisor as well,[17] and he regularly visited Mr. Andrade's worksites multiple times per day.[18] Thus, this factor favors a finding that Mr. Andrade was Defendants' employee.

### 2. Plaintiffs had no opportunity for profit or loss depending on their managerial skill.

Recall that the the touchstone of the "economic realities" test is "whether the worker is economically dependent on the business to which he renders service or is, as a matter of economic reality, in business for himself." *McFeeley*, 825 F.3d at 241. The more the worker's earnings depend on his own managerial capacity rather than the company's, the less the worker is "economically dependent on the business" and the more he is "in business for himself" and hence an independent contractor. *Id.* at 243.

One of the strongest indicia that Plaintiffs were not "in business for themselves" is that they were paid by the hour rather than a fixed price for each project they worked on. If a worker is paid a fixed price for completing a project, then she can make more profit by completing the project ahead of schedule—earning more money in less time, and leaving her with *more* time to undertake additional jobs for other clients (and earn additional profits). This is a hallmark of the independent contractor, in business for herself. By contrast, a worker paid by the hour has no opportunity for profit through managerial skill: the employee is guaranteed a certain amount of money for each hour of service she provides, and the employer doesn't have to give her a raise

---

[16] PSF ¶13.

[17] PSF ¶14.

[18] PSF ¶15.

just because she finishes her day's tasks ahead of schedule. Such a worker is more likely to be dependent on the business to which she renders service.

Here, all three Plaintiffs were paid hourly. José Claros's agreed-upon rate was $22 per hour.[19] Roberto Claros's agreed-upon rate was $18 per hour.[20] Hector Andrade's rate was $25 per hour.[21] José Claros would submit timesheets to Defendants stating his and Roberto's hours, and Defendants would pay José and Roberto according to their respective agreed-upon hourly rates, based on the hours that José submitted.[22] Hector Andrade would submit his hours to Defendants each week via text message, and Defendants would pay Hector according to his agreed-upon hourly rate based on the hours that he submitted.[23]

Thus, this factor also weighs in favor of finding that Plaintiffs were Defendants' employees.

### 3. Plaintiffs had no investment in materials and did not employ other workers.

As the Fourth Circuit has noted, the more that a worker is personally invested in the capital and labor of the business, the more likely that worker is to be an independent contractor. *McFeeley*, 825 F.3d at 243. By contrast, a worker with little personal investment in the business is more likely to be an employee. *See id.*

#### a. *Investment in Materials*

Plaintiffs had no material investment in the business and were "only responsible for labor."[24] All materials were provided either by Defendants or by the homeowner.[25] If a Plaintiff needed

---

[19] PSF ¶16.

[20] PSF ¶17.

[21] PSF ¶18.

[22] *See* PSF ¶19.

[23] PSF ¶20.

[24] PSF ¶21.

[25] *Id.*

extra materials, he would contact Mr. Koo, who would pay for the materials with a company Visa card.[26] Thus, this favor weighs in favor of the Plaintiffs.

b. *Employment of Other Workers*

No Plaintiff employed any workers of his own.[27, 28] While Defendants claim that José Claros "employed" his brother Roberto, the record simply does not bear this out: Roberto was hired by Defendant Myung Koo.[29] And although Roberto worked alongside his brother José, Mr. Koo was responsible for all supervision on their projects, and the brothers both answered to Mr. Koo.[30] Mr. Koo paid Roberto directly,[31] and Mr. Koo determined the wages that Roberto would receive in each paycheck.[32] Only Mr. Koo could fire Roberto.[33] Thus, it was Defendants, not José Claros, who employed Roberto Claros. Accordingly, this factor weighs in Plaintiffs' favor as well.

**4.  The degree of skill involved in construction and remodeling work supports a finding of employee status under the FLSA.**

Defendants hired Plaintiffs to perform various kinds of residential construction and remodeling work such as carpentry, plumbing, electrical work, framing, and installing insulation.[34] This court regularly awards FLSA damages to laborers who perform construction work.[35] And while construction work certainly requires some degree of skill, the Fourth Circuit

---

[26] PSF ¶22.

[27] PSF ¶23

[28] PSF ¶24.

[29] PSF ¶25.

[30] PSF ¶¶10–13.

[31] PSF ¶26.

[32] PSF ¶27.

[33] PSF ¶28.

[34] PSF ¶29.

[35] *See, e.g., Dutan v. Sheet Metal Remodeling, LLC*, 48 F. Supp. 3d 860, 864 (E.D. Va. 2014); *Benitez v. Braga Const. Co.*, No. 1:11-cv-461-CMH-JFA (E.D. Va. Aug. 31, 2011, *report and*

has recognized that "even the skill displayed by the most accomplished dancers in a ballet company would hardly by itself be sufficient to denote an independent contractor designation." *McFeeley*, 825 F.3d at 244. Thus, this factor favors Plaintiffs as well.

### 5. The permanence of the working relationship.

Throughout their employment with Sweet Home, Plaintiffs worked on a full-time basis, regularly working more than 40 hours a week[36]—including much of the time for which they now seek compensation under the FLSA. Defendants forbade Plaintiffs for working for other employers.[37] And the fact that Plaintiffs continued to work for Sweet Home for weeks, even after Defendants had missed multiple payments, raises a reasonable inference that they regarded their work for Sweet Home as full-time work.[38]

### 6. Plaintiffs' work was an integral part of Defendants' business.

Defendants are in the residential construction and remodeling business. Plaintiffs worked as construction and remodeling workers. Thus, this factor favors Plaintiffs.

### Sub-Conclusion

All six factors weigh in favor of Plaintiffs' being FLSA employees, rather than independent contractors—and decidedly so. Thus, Plaintiffs ask that the Court find that the "circumstances of the whole activity" show conclusively that Plaintiffs were dependent on Defendants as a matter of "economic reality," and that they were thus Defendants' "employees" under the FLSA as a matter of law.

---

*recommendation adopted* Sept. 19, 2011); *Lizarzu v. Vallejos*, No. 1:08-cv-858 (E.D. Va. Sept. 22, 2009).

[36] PSF ¶30.

[37] *See* PSF ¶31.

[38] *See Qin Yong Jin v. Any Floors, Inc.*, No. 1:10-cv-1201, 2012 WL 777501, at *2 (E.D. Va. Mar. 5, 2012).

**B. Plaintiffs were "engaged in commerce" or were "employed in an enterprise engaged in commerce or in the production of goods for commerce."**

The FLSA's minimum-wage and overtime requirements apply only to employees engaged in "commerce," "the production of goods for commerce," or who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206–207. Under the FLSA, "commerce" means essentially "interstate commerce." *See id*. at § 203(b).

A business is "engaged in commerce or in the production of goods for commerce" if it (1) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and (2) has a gross annual volume of business of at least $500,000 per year. *See* 29 U.S.C. § 203(s)(1)(A).

Sweet Home Improvements, Inc. serves customers within Virginia and across state lines in Maryland and in the District of Columbia.[39] At all relevant times, the company had an annual gross volume of business of over $500,000.[40] Therefore, Sweet Home is an enterprise engaged in commerce or in the production of goods for commerce, and Plaintiffs are entitled to summary judgment on this element of their FLSA claims as well.[41]

**C. Defendants did not pay Plaintiffs the proper FLSA minimum or overtime wages for all of the hours that they worked.**

Under the FLSA, employers must pay employees a minimum wage of at least $7.25 for each hour worked. *See* 29 U.S.C. § 206(a)(1)(C). FLSA overtime is calculated by the workweek: for every hour over 40 that a worker works in a workweek, the employer must pay the worker at least one-and-a-half times the worker's regular pay rate. 29 U.S.C. § 207(a)(1).

---

[39] PSF ¶1.

[40] PSF ¶32.

[41] *See, e.g., Qin Yong Jin*, *supra* n.38 (floor-installation company was an "enterprise engaged in commerce" where it installed floors in Virginia, Maryland, and the District of Columbia and did business of at least $500,000 per year).

Employers have a duty to keep and maintain a record of their workers' hours worked and wages paid for at least three years. 29 C.F.R. § 516.2(a)(7)–(9) and § 516.5(a). In an FLSA wage case, even if the employer has produced no employment records, workers can nonetheless meet their burden of proof if they produce evidence sufficient to show the amount and extent of their work, "as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). The burden then shifts to the employer to come forward with its own evidence, either to show the precise amount of work performed or to negate the reasonableness of the inference to be drawn from the employee's evidence. *Id.* at 687–88. If the employer fails to do so, the court may then award the employee damages, "even though the result be only approximate." *Id.* at 688.

Here, because Defendants have repeatedly disobeyed the Court's discovery orders, the Court has ruled that Defendants cannot contradict Plaintiffs' evidence of the weeks that they worked or the wages they were paid. (ECF No. 45). As a result, the following facts are undisputed:

1. *José and Roberto Claros*

    a. Defendants did not pay José or Roberto Claros any wages for four consecutive weeks, comprising approximately the month of August 2015.[42]

    b. During each of these four weeks, José and Roberto estimate that they worked for Defendants about nine or ten hours a day Monday through Friday, plus about three additional hours each week.[43]

    c. José and Roberto also worked two Saturdays and two Sundays during this period, for about seven or eight hours each day, though they does not remember the precise weeks that this weekend work occurred.[44]

---

[42] PSF ¶33.

[43] PSF ¶34.

[44] *Id.*

d.   José and Roberto were supposed to receive a 30-minute break per workday, but

they were often not able to take their break.[45]

Plaintiffs thus submit that the following inferences are "just and reasonable" under *Mt. Clemens Pottery*:

- José and Roberto estimate that they worked for Defendants about nine or ten hours a day on weekdays. Thus, it is reasonable to infer that they worked about 9.5 hours per day on weekdays.

- José and Roberto estimate that, when they worked on a Saturday or Sunday, they worked for about seven or eight hours. Thus, it is reasonable to infer that they worked about 7.5 hours per day on the weekends.

- José and Roberto worked for two out of the four weekends, on both Saturday and Sunday, but they cannot recall with certainty which weeks they were. However, as they had already worked over 40 hours by the Friday of each of the four weeks in question, any weekend hours would necessarily be subject to the FLSA's overtime premium no matter the precise week in which they were accrued. (For the sake of determining their weekly hours, Plaintiffs have included these weekend hours in their calculations for Weeks 3 and 4 below).

- In addition to the average daily hours described above, José and Roberto worked an additional three hours each week.

- José and Roberto were supposed to receive a 30-minute break per workday, but they were often unable to take their break. Thus, it is reasonable to infer that they received, on average, a break of 15 minutes per day.

---

[45] PSF ¶35.

Applying these reasonable inferences yields the following results:

- **Weeks 1 & 2: 49.25 hours per week**

(5 weekdays) × (9.5 hours / weekday) + (3 additional hours) – (0.25 hours/day) = 49.25 hours

- **Weeks 3 & 4:  63.75 hours per week**

[(5 weekdays) × (9.5 hours / weekday)] + [(2 weekend days) × (7.5 hours / weekend day)] + (3 additional hours) – (0.25 hours/day) = 63.75 hours

Under the FLSA, Defendants were required to pay José and Roberto Claros at least $7.25 per hour for their first 40 hours of work each week, and one-and-a-half times their regular rate of pay for any hours beyond that. However, Defendants did not pay the brothers any compensation at all for these four weeks. Thus, José and Roberto Claros have established that Defendants did not pay Plaintiffs the proper FLSA minimum or overtime wages for any of the hours that they worked during these four weeks, and they are entitled to summary judgment on this prong of their FLSA claims.

2. *Hector Andrade*

Defendants likewise failed to pay Plaintiff Andrade any wages for four weeks of work, comprising approximately the month of May 2015.[46] Plaintiff Andrade kept records of his work hours in the form of weekly text messages on his cell phone.[47] These messages show the following unpaid hours per week: [48]

- May 4 – May 10: 51 hours

- May 11 – May 17: 53 hours

- May 18 – May 24: 34 hours

---

[46] PSF ¶36.

[47] PSF ¶37.

[48] PSF ¶38.

Mr. Andrade did not record his hours of his last week of work, but he estimates that he worked about 52 hours that week.[49] As Defendants have produced no records on the issue, Mr. Andrade's sworn testimony is sufficient to raise a just and reasonable inference under *Mt. Clemens Pottery* that he did in fact work those hours during that week.

Thus, Plaintiffs' undisputable evidence shows that Defendants violated Mr. Andrade's FLSA minimum-wage rights in Weeks 1–4, and his FLSA overtime rights in Weeks 1, 2, and 4. Accordingly, Mr. Andrade is entitled to summary judgment on this prong of his FLSA claims.

### D.  Plaintiffs' work did not fall under any of the FLSA's statutory exemptions.

The FLSA exempts certain narrow classes of employees from its overtime pay requirements. *See* 29 U.S.C. § 213. The employer bears the burden of proving that an employee's job is exempt. *Darveau v. Detecon, Inc.*, 515 F.3d 334, 337 (4th Cir. 2008). None of the exemptions applies to workers who do the kinds of things that Plaintiffs did: residential construction and remodeling work. Therefore, summary judgment is appropriate on this point as well: the Plaintiffs were not exempt from the FLSA based on the type of work they performed.

### Sub-Conclusion

Plaintiffs' evidence on all four prongs of their FLSA claims shows decisively that Plaintiffs are entitled to judgment on those claims as a matter of law. And for the reasons that follow, the Court should next find that all three Defendants are jointly and severally liable for those claims as FLSA "joint employers."

---

[49] PSF ¶39.

## II. All three Defendants jointly employed the Plaintiffs under the FLSA.

### A. Joint Employment Generally

As this Court has recognized, corporate officers with operational control of the corporate enterprise are FLSA "employers" along with the corporation, and may be held jointly and severally liable under the FLSA for unpaid wages. *Cubias v. Casa Furniture & Bedding, LLC*, No. 1:06-cv-386-JCC, 2007 WL 150973, at *2 (E.D. Va. Jan. 16, 2007), *citing Dole v. Elliot Travel*, 942 F.2d 962, 965 (6th Cir. 1991) *and Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983). Each putative employer "need not have control over all aspects of the work of the laborers" to be an "employer" under the FLSA. *Howard v. Malcolm*, 852 F.2d 101, 105 (4th Cir. 1988). Rather, if the facts show that that "employment by one employer is not completely disassociated from employment by the other employer(s)," a joint-employment situation exists, and all of the employee's work for all of the joint employers during the workweek is considered "*one employment* for purposes of the [FLSA]." *Schultz v. Capital Sec. Int'l., Inc.*, 466 F.3d at 305 (4th Cir. 2006) (emphasis and alteration in original), *quoting* 29 C.F.R. § 791.2(a).

### B. Legal Standard

The federal courts have not established a uniform test for whether an individual defendant is a joint employer, but many Circuits use generally-similar factors to guide the determination. The Fourth Circuit does not appear to have explicitly adopted any of the multi-factor tests that other Circuits have used. In *Schultz v. Capital Sec. Int'l, Inc.*, however, the court favorably cited *Bonnette v. Cal. Health & Welfare Agency,* 704 F.2d 1465, 1470 (9th Cir. 1983) and *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998), which apply the same four-factor test for FLSA joint employment. *See Schultz,* 466 F.3d at 306. And while the *Schultz* court did not explicitly adopt that test, the facts cited by the court in determining the defendants' joint employer status track those factors closely. *See Schultz*, 466 F.3d at 306.  Those factors are: whether the alleged employer

- Had the power to hire and fire employees;

15

- Supervised and controlled employee work schedules or conditions of employment;

- Determined the rate and method of payment; and

- Maintained employment records.

*Bonnette*, 704 F.2d at 1470; *Baystate*, 163 F.3d at 675. Ultimately, however, "the determination of joint employment must be based upon the 'circumstances of the whole activity.'" *Schultz,* 466 F.3d at 306, *quoting Bonnette,* 704 F.2d at 1470.

## C. Defendants satisfy the standard and are FLSA joint employers.

Applying this test, the facts show conclusively that the individual Defendants are joint employers under the FLSA:

- Myung Koo has the sole power to hire and fire Sweet Home's construction workers.[50]

- Myung Koo and Miae Koo control the day-to-day operations of Sweet Home.[51] Defendant Myung Koo supervises Sweet Home's construction workers, and supervised the Plaintiffs.[52] He sets the construction workers' hours.[53] And he intervenes to resolve disputes between construction workers and helpers,[54] or between construction workers and homeowners.[55]

- Myung Koo determines Sweet Home workers' rate and method of payment,[56] and both he and Miae Koo had paycheck-signing authority during the period of Plaintiffs' employment.[57]

---

[50] PSF ¶40.

[51] PSF ¶2.

[52] PSF ¶41.

[53] PSF ¶42.

[54]PSF ¶43.

[55] PSF ¶44; *see also Bonnette*, 704 F.2d at 1470 (state agency was a joint employer where, *inter alia*, it intervened to resolve disputes between clients and the workers it provided).

[56] PSF ¶45.

[57] PSF ¶46.

- During Plaintiffs' employment, Defendant Miae Koo was responsible for all payroll recordkeeping and processing.[58] Myung Koo uses Miae Koo's phone as a backup system to store important company documents.[59] And Miae Koo was the one who performed the search for employment records in response to Plaintiffs' document requests.[60]

Thus, both Mr. and Mrs. Koo were Plaintiffs' joint employers under the FLSA.

## III. FLSA Damages, Costs, and Attorney's Fees

### A.  FLSA Damages

For any hour that a Plaintiff worked without pay, he is entitled to the minimum wage ($7.25 per hour) and an additional equal amount as liquidated damages. 29 U.S.C. § 216(b). For any hour over 40 that a Plaintiff worked without pay in a given workweek, he is entitled to one-and-a-half times his regular rate of pay and an additional equal amount as liquidated damages. *Id.*[61] Plaintiffs' overtime rates were as follows:

- *José Claros*: ($22/hour regular rate) × (1.5 overtime premium) = $33/hour overtime rate

- *Roberto Claros*: ($18/hour regular rate) × (1.5 overtime premium) = $27/hour overtime rate

- *Hector Andrade*: ($18/hour regular rate) × (1.5 overtime premium) = $37.50/hour overtime rate

---

[58] PSF ¶47.

[59] PSF ¶48.

[60] PSF ¶49.

[61] While the decision to award such damages rests in the Court's sound discretion, the Fourth Circuit has noted that the FLSA "plainly envisions" the award of liquidated damages as "the norm" for plaintiffs who prevail. *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997).

Thus, Plaintiffs are entitled to the following damages under the FLSA:

### *José and Roberto Claros*

**Weeks 1 & 2: (49.5 hours per week)**

- José Claros: (40 hours × $7.25 / hour) + (9.5 hours × $33 / hour overtime rate) = $603.50 × 2 (liquidated damages) = **$1,207 per week**

- Roberto Claros: (40 hours × $7.25 / hour) + (9.5 hours × $27 / hour overtime rate) = $546.50 × 2 (liquidated damages) = **$1,093 per week**

**Weeks 3 & 4: (63.75 hours per week)**

- José Claros: (40 hours × $7.25 / hour) + (23.75 hours × $33 / hour overtime rate) = $1,073.75 × 2 (liquidated damages) = **$2,147.50 per week**

- Roberto Claros: (40 hours × $7.25 / hour) + (23.75 hours × $27 / hour overtime rate) = $931.25 × 2 (liquidated damages) = **$1,862.50 per week**

### *Hector Andrade*

**Week 1: 51 hours**
(40 hours × $7.25 / hour) + (11 hours × $37.50 / hour overtime rate) = $702.50 × 2 (liquidated damages) = **$1,405**

**Week 2: 53 hours**
(40 hours × $7.25 / hour) + (13 hours × $37.50 / hour overtime rate) = $777.50 × 2 (liquidated damages)= **$1,555**

**Week 3: 34 hours**
(34 hours × $7.25 / hour) = $246.50 × 2 (liquidated damages) = **$493**

**Week 4: 52 hours**
(40 hours × $7.25 / hour) + (12 hours × $37.50 / hour overtime rate) = $740 × 2 (liquidated damages) = **$1,480**

**TOTAL FLSA DAMAGES:**

**José Claros:** $1,207 + $1,207 + $2,147.50 + $2,147.50 = **$7,309**
**Roberto Claros:** $1,093 + $1,093 + $1,862.50 + $1,862.50 = **$5,911**
**Hector Andrade:** $1,405 + $1,555 + $493 + $1,480 = **$4,933**

### B.  Attorney's Fees and Costs

Under the FLSA, plaintiffs who prevail are entitled to their reasonable attorneys fees and costs. 29 U.S.C. § 216(b). Thus, Plaintiffs are entitled to these remedies as well.

## IV.   Conclusion

The Plaintiffs in this case each worked for Defendants for four weeks without receiving any compensation whatsoever. As the undisputed evidence shows, Defendants violated the FLSA; all Defendants are jointly and severally liable for those violations as "joint employers"; and Plaintiffs have proven their quantum of damages with specificity. Accordingly, Plaintiffs ask that the Court enter summary judgment on the entirety of their FLSA claims.

**Claim 3: Virginia Contract Law**
**(Against Defendant Sweet Home Improvements, Inc. Only)**

In the alternative, Plaintiffs seek their contract damages under Virginia law for the same four weeks that gave rise to Plaintiffs' respective FLSA claims. As the undisputed evidence shows:

Each Plaintiff reached an agreement with Defendant Sweet Home Improvements, Inc. whereby Sweet Home agreed to pay that Plaintiff an hourly wage in exchange for that Plaintiff's performing construction and remodeling work for Sweet Home.[62] Employment contracts were thus formed under Virginia law. *See Lester v. TMG, Inc.*, 896 F. Supp. 2d 482, 485 (E.D. Va. 2012). Sweet Home failed to pay Plaintiffs any wages for four weeks of work that they performed,[63] breaching the contracts. As a result of Sweet Home's breach, Plaintiffs suffered damages: the difference between what Defendants promised to pay and what they actually paid. *See Paddock v. Mason*, 187 48 S.E.2d 199, 203 (Va. 1948).

---

[62] PSF ¶50.

[63] PSF ¶¶33 and 36.

Accordingly, Plaintiffs' contract damages are as follows:

- *José Claros*
  Weeks 1 & 2: (49.25 hours / week) × ($22 / hour) = $1,083.50 / week
  Weeks 3 & 4: (63.75 hours / week) × ($22 / hour) = $1,402.50 / week

  **Total Contract Damages: $4,927**

- *Roberto Claros*:
  Weeks 1 & 2: (49.25 hours / week) × ($18 / hour) = $886.50 / week
  Weeks 3 & 4: (63.75 hours / week) × ($18 / hour) = $1,147 / week

  **Total Contract Damages: $4,067**

- *Hector Andrade*:
  [(51 hours) + (53 hours) + (34 hours) + (52 hours)] = (190 hours) × ($25/hour) =

  **Total Contract Damages: $4,750**

Plaintiffs thus seek summary judgment on their contract claims for these four weeks.

### Claims 4 & 5: Virginia Contract Law
### (Against Defendant Sweet Home Improvements, Inc. Only)

Around the end of August 2015, Sweet Home offered to pay Plaintiffs José and Roberto Claros $150 per day as an inducement not to quit and to finish the Sweet Home projects they had already started.[64] José and Roberto Claros accepted that offer.[65] A contract was thus formed under Virginia law. Sweet Home did not pay José or Roberto Claros for four days of work they performed under this agreement,[66] breaching the contract. As a result of Sweet Home's breach, José and Roberto Claros suffered damages: ($150 / day) × (4 days) = **$600 each**. José and Roberto Claros thus seek summary judgment on these contract claims as well.

---

[64] PSF ¶51.

[65] *Id.*

[66] J. Claros Decl. at ¶17; R. Claros Decl. at ¶17.

# CONCLUSION

Wherefore, Plaintiffs respectfully request that the Court enter summary judgment for Plaintiffs on all of their claims, and grant them the following relief:

1. Award Plaintiff José Claros $7,309 for his four weeks of unpaid wages under the FLSA, jointly and severally against all Defendants. In the alternative, award José Claros $4,927 for these four weeks under Virginia contract law, against Defendant Sweet Home only.

2. Award Plaintiff Roberto Claros $5,911 for his four weeks of unpaid wages under the FLSA, jointly and severally against all Defendants. In the alternative, award Roberto Claros $4,067 for these four weeks under Virginia contract law, against Defendant Sweet Home only.

3. Award Plaintiff Hector Andrade $4,933 for his four weeks of unpaid wages under the FLSA, jointly and severally against all Defendants. In the alternative, award Mr. Andrade $4,70 for these four weeks, against Defendant Sweet Home only.

4. Award Plaintiffs their costs and reasonable attorney's fees under the FLSA.

5. Award Plaintiffs José and Roberto Claros an additional $600 each in contract damages under Virginia law, against Defendant Sweet Home only; and

6. Any other relief the Court thinks just and proper.


/s/ Nicholas Cooper Marritz                                    September 26, 2016
Nicholas Cooper Marritz (VSB No. 89795)
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Tel: (703) 720-5607
Fax: (703) 778-3454
nicholas@justice4all.org
*Attorney for Plaintiffs*

**Certificate of Service**

I hereby certify that on September 27, 2016, I uploaded the foregoing *Memorandum in Support of Motion for Summary Judgment By Plaintiffs José Claros, Roberto Claros, and Hector Antonio Andrade* to the Court's CM/ECF system, which will cause a Notice of Electronic Filing to be sent to Defendants' counsel of record:

> Jason Jin Huh
> Law Office of Jason J. Huh, PLLC
> 4101 Chain Bridge Road, Suite 214
> Fairfax, VA 22030
> attorneyhuh24@gmail.com
> *Counsel for Defendants*

/s/ Nicholas Cooper Marritz                                    September 27, 2016
Nicholas Cooper Marritz (VSB No. 89795)
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
Tel: (703) 720-5607
Fax: (703) 778-3454
nicholas@justice4all.org
*Attorney for Plaintiffs*